JOHN MANNING ET AL., APPELLANTS, *v.* JOSEPH FIFE, WILLIAM PARKER ET AL., RESPONDENTS.

1, *Prior and Subsequent Appropriators of Water—Rights of.*

    R. appropriated a definite quantity of the waters of the Weber river to irrigate certain lands.   Later, H. appropriated and diverted, lower down from the same river, a certain amount to irrigate other lands.   Afterwards, W. appropriated and diverted from the same stream, at a point still lower down, a definite quantity to irrigate other lands.   And, still later, D. appropriated and diverted from the same river, at a point above R., a certain amount to irrigage other lands.   During five days, while H. and W. were unable to get as much water. as they had appropriated and as much as they needed, R. took no water, and D. diverted the same amount, in pursuance of an agreement with R.   *Held,* that the agreement, without the consent of H. and W., was of no effect, and that the law required R. to leave in the river, or, if taken into his canal, to return into the river, so much as he did not actually require, for the use of H. and W., so far as they needed it, not in excess of their appropriation.

2. *Surplus Water—Subsequent Appropriators—Order of Rights.*

An individual may appropriate from a natural source of supply as much water as the purpose requires at any time; but, if the use of the amount is not actually needed all the time, subsequent appropriators, if any, are entitled to take it in the order of their rights, to the extent of their necessities and appropriations.

3. Water may be appropriated to be used or sold for any useful purpose, and the quantity named may be sufficient for the greatest need; but such as is not actually required must remain or go back into the stream for the use of subsequent appropriators, in the order of their rights.

(No. 934. Decided July 22, 1898.)

Appeal from district court, Weber county; H. H. Rolapp, *Judge.*

Suit by John Manning and another against Joseph Fife and another for an injunction. From a decree dismissing the bill, plaintiffs appeal. *Reversed.*

*D. Evans, L. R. Rogers* and *E. M. Allison, Jr.,* for appellants

*Kimball & Kimball,* for respondents.

ZANE, C. J.:

This is an appeal from a decree dismissing appellants' bill for an injunction, and awarding costs against them. The questions for decision arise upon the findings. The proof upon which they were made is not before us. Each of the respective parties to this suit irrigated land from some of the canals mentioned in the findings, and is represented by the irrigation or canal company that owns it. It appears from the findings that the defendants, The Riverdale Bench Canal Company, appropriated, in 1866, 18.67 second-feet of water (the second-foot being the

standard unit of measurement for flowing water
in this state [Sess. Laws 1897, p. 225]), and has been entitled to that much ever since; that the Hooper Irrigation
Company, lower down the river, appropriated, in 1867,
115.01 second-feet; that the Wilson Irrigation Company,
at a point still further down, in 1870, appropriated 90
second-feet; and the Davis County & Weber County Canal
Company, at a point four miles above the point of diversion of the Riverdale Bench Canal, also made an appropriation later than either of the others. It further appears that the irrigating season of these respective canals
was from April 15 to October 15 of each year; that, in
pursuance of an agreement between the Riverdale Bench
Canal Company and the Davis & Weber Canal Company
the former closed its head gate at the Weber river five
days, commencing on August 1, 1897, and the latter company, on the same day, turned into its canal from the river
18.67 second feet of water for the same length of time;
that all the land that had and could be irrigated from the
Riverdale Bench Canal (being 500 acres, much of it wet)
was sufficiently irrigated when it shut the water out of its
canal, and that the Riverdale Bench Canal Company, by
giving the water to the last appropriator, did not to any
extent injure the crops growing on the land irrigated by
it; that during the same time the crops and trees growing
on the lands irrigated from the plaintiffs' canals were
greatly injured and damaged, because the water left in
the river was less than they had appropriated, and not
sufficient to irrigate the lands under their canals during
the same five days. The Riverdale Bench Canal Company
claims the right to close its gate at the river, and allow
the Davis & Weber County Canal Company to divert from
the river into its canal 18.67 second-feet of water, though
there may not be enough left to furnish the plaintiffs the

amount of water appropriated by them, and to sufficiently irrigate the lands under their canals; while the plaintiffs deny that claim, and insist that they are entitled to so much of the water appropriated by the Riverdale Bench Canal Company as it does not actually use, and is not necessary to irrigate the lands under its canal, and for the domestic use of their occupants. .The appropriation was from April 15 to October 15 of each year, and we must assume that the amount of water necessary to irrigate the 500 acres of land under its canals varied during that time. The court in effect found that no part of 18.67 second-feet of water was necessary to irrigate the lands susceptible of being watered from the Riverdale Bench Canal, or for their occupants during the five days it was used by the Davis & Weber County Canal. The difference between the quantity of water the Riverdale Bench Canal Company appropriated, and the quantity actually used and necessary for the purposes of its appropriation, the plaintiffs insist, was surplus water, and was theirs to the full quantity of their appropriation if they or either of them needed it for the purposes of their appropriation; that the first appropriator had no right to deprive them of it under such circumstances, by wasting it, or giving it away, or turning it to a company or other person whose appropriation was subsequent to theirs, and for whom it was not appropriated by the first appropriator.

The question is presented: Does an appropriator of water from a natural source of supply, when there are subsequent appropriators, who need the water, and actually have less than the quantity they appropriated, have the right to divert it to uses other than those for which it was appropriated, by giving it away or wasting it? Section 2780, Comp. Laws Utah 1888, declares that "a right to the use of water for any useful purpose, such as for

domestic purposes, irrigating lands, propelling machinery, washing and sluicing ores, and other like purposes, is hereby recognized and acknowledged to have vested and accrued, as a primary right, to the extent of, and reasonable necessity for such use thereof, under any of the following circumstances: (1) Whenever any person or persons shall have taken, diverted and used any of the unappropriated water of any natural stream, water course, lake, or spring, or other natural source of 'supply. (2) Whenever any person or persons shall have had the open, peaceable, uninterrupted and continuous use of water for a period of seven years." The right to the use of water for any useful purpose is deemed to have vested as a primary right to the reasonable necessity for such use. The right only vests to the extent of the necessity. The nominal appropriation as to quantity may be sufficient to afford enough at times when the most water is needed, and to that limit the appropriator may draw when necessity requires; but, when less than the nominal or maximum quantity is needed, the difference must go to subsequent appropriators, to be taken by them in the order of their appropriation. The quantity must vary according to the necessity. To this varying quantity the appropriator's right is always vested. And, if he takes more into his canal than the purposes of his appropriation require, section 2785, Comp. Laws Utah 1888, requires him to convey the surplus again to the natural channel or source for the use of subsequent appropriators. Sess. Laws Utah 1897, p. 221, § 7, provides that "in all cases where, by virtue of prior appropriation, any person may have diverted all the water of any stream, or to such an extent that there shall not be an amount sufficient left therein for those having a subsequent right to the waters of such stream, and there shall at any time be a surplus of water so diverted over

and above what is actually used by the prior appropriator, such person shall be required to turn and to cause to flow back into the stream, such surplus water, and upon failure to do so, within twenty-four hours after demand being made upon him in writing by any person having a right to the use of such surplus water, the person so diverting the same, shall be liable to the person aggrieved thereby for the amount of damage sustained after such notice; to be recovered by civil action by any person having a right to the use of such surplus water." When the prior appropriator diverts the water of a stream so that there is not enough left for those having subsequent rights, this section requires him to return to the stream, for their use, the surplus over what he actually uses; and a refusal to do so, upon demand in writing by the person entitled to the surplus water, makes him liable in damages to such person.

The Riverdale Bench Canal Company had no right to give the water it did not use, during the five days mentioned in the findings, to the Davis & Weber Canal Company, and that company had no right to use it. It belonged to the plaintiffs, in the order of their appropriations. Undoubtedly, the unappropriated waters of natural streams or other natural sources of supply may be appropriated by means of canals, ditches, reservoirs, or dams, to be used or sold for any useful purpose, and the quantity appropriated and named may be made sufficiently high for the greatest need of the appropriator; but so much as is not actually required and used at any time must go back to the common source or channel for subsequent appropriators, in the order of their rights. It appears from the findings that the Riverdale Bench Canal Company appropriated 18.67 second-feet of water to be taken from Weber river for the

purpose of irrigating 500 acres of land under its canal; that the plaintiffs subsequently made appropriations from the same river, naming the quantities. These appropriations included all the appropriation of the prior appropriator it did not need, and did not actually use for the purpose of its appropriation, to the extent of their nominal limit, when they needed it. That being so, their subsequent appropriator, The Davis & Weber County Canal Company, could not acquire a right to use surplus water from their prior appropriator, by gift or otherwise, while they needed it for the purposes of their appropriation. The appropriator may change the purpose of his appropriation, but he cannot increase the quantity to the injury of existing subsequent appropriators, and he will be subject to the same rule after the change as before. He cannot give away or dispose of his surplus water to the injury of subsequent appropriators. *Creek* v. *Waterworks Co.*, (Mont.) 38 Pac. 459; *Nichols* v. *McIntosh*, (Colo. Sup.) 34 Pac. 278; *Barnes* v. *Sabron*, 10 Nev. 217; Kin. Irr. § 231; *Hague* v. *Irrigation Co.*, (Utah) 52 Pac. 765.

We are of the opinion that the court erred in making its conclusions of law, and in entering a decree thereon denying a writ of injunction, and in dismissing plaintiffs' complaint. Some of the findings of fact appear to be inconsistent, but the evidence is not before us. We therefore direct the court below to set aside its decree, conclusions of law, and findings of fact, and to make such consistent findings of fact as the evidence authorizes, and to state its conclusions of law therefrom, and enter a decree thereon in accordance with the principles announced in this opinion. Decree reversed.

BARTCH and MINER, JJ., concur.