SOWARDS et al. v. MEAGHER et al.

No. 2052.   Decided January 22, 1910 (108 Pac. 1112).

1. EVIDENCE—JUDICIAL NOTICE—ACTS OF CONGRESS.   Judicial notice is taken of an act of Congress restoring Indian reserved lands to the public domain.   (Page 216.)

2. WATERS AND WATER COURSES—PUBLIC WATERS—APPROPRIATION. The right to use unappropriated waters on the public domain and a right in the land itself are severable; the former not depending upon the latter.   (Page 218.)

3. WATERS AND WATER COURSES—APPROPRIATION—LAWS GOVERNING. Acquisition of the right to use unappropriated public waters whether on the public domain, within a reservation, or elsewhere, is controlled by the laws and customs of the state in which the water is found.   (Page 218.)

4. WATER AND WATER COURSES—PUBLIC WATERS—RIGHT TO APPROPRIATE.   The right to use waters on the public domain for a beneficial purpose may be acquired by mere appropriation, and the first appropriation takes against the world to the extent of his established appropriation, though at the time of his application to the state engineer he has no present right in the lands bordering the source of supply nor in the lands to be benefited; he being entitled to conduct the water across intervening public land to irrigate lands held by him or others or to dispose of it for a beneficial purpose on lands held or owned by them.   (Page 218.)

5. INDIANS—RESERVATIONS NOT SUBJECT TO PRIVATE APPROPRIATION. No private rights in the lands of an Indian reservation can be acquired.   (Page 219.)

6. EVIDENCE—JUDICIAL NOTICE—OPENING OF PUBLIC LANDS. Judicial notice is taken of the opening of an Indian reservation in. the state and restoration of the unalloted lands thereof to the public domain, but not that particular tracts thereof have since been occupied, claimed, or possessed. (Page 221.)

7. WATERS AND WATER COURSES—PUBLIC LANDS—ACQUISITION OF RIGHTS. Under Comp. Laws, sec. 1288x *et seq.*, prescribing procedure for the appropriation of public water, an inceptive right to use such water upon or within an Indian reservation can be initiated or acquired after issuance of a proclamation restoring the lands to the public domain but before they are subject to entry, if the application be made in good faith to appropriate the water for a beneficial use, and not for speculation or monopoly. (Page 222.)

8. WATERS AND WATER COURSES—"APPROPRIATION OF WATER"—ESSENTIALS. To constitute a valid appropriation of water, there must be intent to apply it to a beneficial use, a diversion from the natural channel by a ditch, canal or other structure, and an application of it to a useful industry within a reasonable time; the last-mentioned element being the most essential. (Page 222.)

9. WATERS AND WATER COURSES—APPLICATION FOR APPROPRIATION—EFFECT. An application to the state engineer for permission to appropriate public water is merely notice of intent to appropriate, and does not establish an appropriation. (Page 223.)

10. WATERS AND WATER COURSES—APPROPRIATION—EXTENT OF RIGHTS. Rights under an appropriation of water are limited to the quantity actually used for a beneficial purpose. (Page 225.)

11. WATERS AND WATER COURSES—APPROPRIATION—CONFLICTING RIGHTS. To establish a right to appropriate water, one must rely on the strength of his own right, and not on. the weakness of his adversary's. (Page 225.)

Appeal from District Court, Fourth District; *Hon. J. E. Booth,* Judge.

Action by N. G. Sowards and another against N. J. Meagher and others.

Judgment dismissing action. Plaintiffs appeal.

AFFIRMED.

*D. W. Moffat* and *N. T. Porter* for appellants.

*Thurman, Wedgwood & Irvine* for respondents.

STRAUP, C. J.

The appellants, plaintiffs below, filed an application with the state engineer for the appropriation of waters of the East fork of Lake fork of Green river, which has its source in Wasatch County, and flows southwesterly into the Du Chesne river, a tributory of the Green. By reason of such application, they claim to have initiated a right to the use of three hundred second feet of water of such stream for irrigation purposes. Upon a protest filed by the respondents, the defendants below, who also filed applications for an appropriation of the same waters, plaintiffs' application was rejected and the respondents' approved by the state engineer. The plaintiffs then brought this action in the District Court of the Fourth Judicial District against the defendants to adjudicate the questions involved.

In their complaint it is alleged that on and prior to the 28th day of August, 1905, there were three hundred second feet of unappropriated water of the stream, and that on that day, "at the hour of twenty minutes after nine o'clock in the forenoon," they (the plaintiffs) "filed in the office of the state engineer of the State of Utah" their application in writing to appropriate three hundred second feet of water to be used each year from January 1st to December 31st, to be diverted from the Green River system, Wasatch County, at a particularly described point on the East Fork of Lake fork of Green River. In such application the diverting works and channel were described, the purpose of such appropriation stated to be for irrigation, and the lands proposed to be irrigated, consisting of a total area of 33,680 acres, described by reference to legal subdivisions. It is further alleged that the defendant Meagher on the 31st day of July, 1905, and the defendant Jarvis on the 19th day of August, 1905, made applications to appropriate the same water by filing written applications with the state engineer, but that at the time of such filings "all of the said waters applied for" by them "the proposed point of diversion, and the lands proposed to be irrigated, were all a part of, and included in an Indian reservation within the state of Utah

set apart exclusively for the use and occupation of the Indian wards of the federal government, which was reserved from the public domain and under the exclusive control of the United States of America, and that all matters and things pertaining to the appropriation of said water were done upon the Indian reservation so exclusively controlled as herein set forth, and that these plaintiffs filed the first application to appropriate the waters" of the stream in question "after the opening of said reservation." It is further alleged that the rights of the defendants Meagher and Jarvis, acquired by them by reason of their applications, were assigned to the defendant the Dry Gulch Irrigation Company; who in March, 1907, "protested the granting of these plaintiffs' application," which was in June, 1907, rejected by the state engineer on the sole ground that their application "is in conflict with the prior applications" of the defendants Meagher and Jarvis. It is further alleged that the defendants have no right, title, or interest whatsoever in or to any portion of the water applied for by the plaintiffs; that they be required to set forth whatever rights or interests are claimed by them; that such claims be adjudged to be unfounded and of no effect; and that plaintiffs' rights and title in and to the use of the waters be determined, quieted, and confirmed. A general demurrer for want of facts was interposed to this complaint, which was sustained by the trial court. The plaintiffs stood on their complaint and declined to amend. The action was thereupon dismissed. They appeal.

The only question presented for review is the ruling of the court sustaining the demurrer. The statute (Comp. Laws 1907, sec. 1288x et seq.), so far as necesary here to notice, provides that, in order that one may acquire the right to the use of any unappropriated public water, he shall make an application in writing to the state engineer, setting forth, among other things, the nature of the proposed use for which the appropriation is intended, the quantity of water to be used, the time during which it is to be used each year, the name of the stream or source where the water is to be diverted, the nature of the diverting works, the dimensions,

grade, shape, and nature of the proposed diverting channel, and such other facts as will clearly define the full purpose of the proposed appropriation. It further provides that, "if the proposed use is for irrigation, the application shall show, in addition to the above required facts, the legal subdivisions of the land proposed to be irrigated, with the total area thereof, and the character of the soil." It is further provided that, if the application is conformable to the requirements of the statute, the engineer shall receive and record it, and shall publish a notice of the application. At any time within thirty days after the completion of the publication, any person may file with the state engineer a written protest against the granting of the application. It then becomes the duty of the engineer to approve or reject the application. Either party aggrieved may then bring an action in the district court for the purpose of adjudicating the questions involved. It is further provided that, in his indorsement of approval of an application, the state engineer shall require that the actual construction work be commenced within six months from the date of such approval, and that it shall be completed within five years from such date. But the engineer may allow in some cases an extension of time to complete such work, or may limit the applicant to a less period of time. It is further provided that, upon the completion of the work, proof shall be made and maps filed showing the nature and extent of the completed works, the stream or source, and place where the water, and the quantity thereof, is diverted, the character, grade, and dimensions of the diverting channel, and other things showing the diversion and appropriation of the water. Upon such proof a certificate of appropriation is then given the applicant, a copy of which is filed with the state engineer and one with the county recorder of the county where the water is diverted.

It may be judicially noticed, and here stated, that Congress in 1902 ordered the unallotted lands of the Indian reservation referred to in the complaint to be restored to the public domain on the 1st day of August, 1903. That time was extended to October 1, 1904,

and again to March 10, 1905. On March 3, 1905, Congress
again extended such time to September 1, 1905, but au-
thorized the President of the United State by proclamation
to fix an earlier time. Thereupon the President, on the
14th day of July, 1905, issued a proclamation restoring the
unallotted lands of the reservation to the public domain, and
declaring such lands open to entry, settlement, and disposi-
tion on and after the 28th day of August, 1905. It will be
observed that it is alleged in the complaint that the defend-
ants filed their applications with the state engineer for the
appropriation of the waters in question on the 31st day of
July, and the 19th day of August, 1905, after the proclama-
tion was issued, but before the reservation was actually
opened and the unallotted lands restored to the public do-
main, and were subject to entry, settlement, and disposition.
Because of such fact, and of the further allegations in the
complaint that "all of said water applied for and the lands
proposed to be irrigated" by the defendants "were all a
part of and included in" the Indian reservation, it is urged
by appellants that no right or title in or to the use of the
waters or the lands could then lawfully be acquired or
initiated; that the State of Utah could not prior to the
28th day of August exercise any jursdiction over the waters
or the lands of the reservation; that the defendants were
mere trespassers, and that their applications were void. But,
since the appellants filed their application with the state en-
gineer on the very day that the reservation was opened "at
the hour of twenty minutes after nine o'clock in the fore-
noon" of that day, it is asserted by them that a right in and
to the use of the water and also in and to the lands proposed
to be irrigated by them could then lawfully be acquired, and
that a right in and to the use of the water was initiated
and acquired by them by the filing of their application.
Upon these premises, it is urged that the engineer erred in
rejecting their application and approving the applications
of the defendants, and that the court likewise erred in sus-
taining the demurrer. It is now well settled and recognized
that there is a distinction between initiating or acquiring a

right to the use of unappropriated public waters on public domain, and a right or interest in or to the public lands themselves, and that the former is not dependent upon the latter. To initiate and acquire a right in and to the use of unappropriated public water, whether on the public domain or within a reservation or elsewhere, is dependent upon the laws or customs of the state in which such water is found. Property in and to the use of unappropriated waters of a stream or spring, or lake, on the public domain, or within a reservation, may be acquired for a beneficial purpose by mere appropriation, and the first appropriator, to the extent of his appropriation when completed and established, is the owner as against all the world. In order that the appropriator may be entitled to the use of such water, it is not essential that he should have located or taken possession of any tract or parcel of the public domain bordering upon the stream or lake from which the appropriation is made, or that he even have an interest in or to the lands proposed to be irrigated, if such be the beneficial purpose of the appropriation. An appropriation may be made of such water for the irrigation of lands not situated upon or near the stream or lake from which it is taken, and the water may be conducted by means of ditches or channels, or otherwises, across the intervening public lands, to irrigate lands possessed by the appropriator, or others, or he may sell and dispose of the water thus conducted to others to use it for a beneficial purpose on claims or lands possessed or owned by them, or in which they have an interest, and upon which the water may be and is applied for a beneficial purpose. These views are discussed and enlarged upon by Mr. Kinney in his work on Irrigation (chapters 6, 7) and by Mr. Farnham in his work on Waters and Water Rights (volume 3, chap. 22). And it also has been held that a valid water right may be acquired even though there had been no compliance with the statute regulating the appropriation of unappropriated public waters, where the unappropriated water was actually diverted by means of a ditch or canal or other-

wise and applied to a beneficial use before the inception of any adverse statutory claim. (*Murray v. Tingley,* 20 Mont. 260, 50 Pac. 723, and cases there referred to.) We have no doubt that unappropriated public water on a reservation or on the public domain is subject to appropriation, and may be appropriated for a beneficial purpose, though the appropriator has not, when his application is filed with the state engineer, a present right in or to the lands along the stream from which the water is proposed to be diverted, or in or to the lands proposed to be irrigated by him. In this respect the appropriation of unappropriated public water on a reservation and the location of a mining claim or other lands on or within a reservation rest on different foundations, and are controlled by different principles. The one is a proper subject of rightful acquisition. The other is not. An appropriation made of such waters will be protected, even as against the government of the United States. The location of mining claims or the taking up of lands on or within a reservation is void and of no effect, because the ores or lands sought to be taken, or acquired, are not then subject to private ownership or acquisition.

But the serious question in the case, and one not altogether free of doubt, is whether, to initiate a right in the use of unappropriated public water, it is esential, when the notice of intention to appropriate is given, or when, as required by the statute, a written application is made and filed with the state engineer, that the beneficial purpose or use for which the water is proposed to be appropriated shall be immediate and then existing, or whether the beneficial use may be contemplated or anticipated in the future. That is to say, when in an application filed to appropriate water in which the applicant is required, as by the statute provided, to set forth "the nature of the proposed use for which the appropriation is intended," the quantity of water to be used, etc., and such other facts as will clearly define the full purpose of the proposed appropriation, and, if the proposed use is for irrigation, in addition thereto, "the lands pro-

posed to be irrigated, with the total area thereof," the question is, in order to properly initiate a right to the use of the water, whether "the lands proposed to be irrigated" must, when the application is made, be then subject to such a use and capable of being devoted to such a purpose, not necessarily by the applicant himself, but by some one. When the defendants made their applications to appropriate the waters for the purpose of irrigation, no one could then lawfully enter upon, occupy, possess, cultivate, farm, or otherwise use "the lands proposed to be irrigated," because they then were a part of, and included in, the reservation, and were then not open to entry, settlement, or disposition. Neither the applicants nor any one else could then lawfully use water on such lands. No present right permitting any one to make use of the beneficial purpose for which the proposed appropriation was made then existed. The inceptive right initiated by the defendants in and to the use of the water by the filing of their applications depended upon several contingencies: One, upon the actual opening of the reservation for settlement; another, upon the entering upon, or settlement of, or taking up of, some or all of the lands proposed to be irrigated by some one entitled to enter upon such lands, or to take them up, after the reservation was opened; and, still another, the agreement or consent of such persons to take and use the water on such lands, or otherwise to permit them to be irrigated therewith, or the water to be used thereon for the purposes of the proposed appropriation. Should any one of these contingencies fail, the proposed appropriation itself would prove abortive, because the application of the water to the proposed beneficial purpose— the absolute and indispensable essential to constitute a completed valid appropriation—could not be made in such case. In this respect the appellants, however, do not stand on much better ground than do the respondents. The only difference between the parties is this: It is alleged that the respondents made applications to appropriate the water in question to irrigate lands then alleged to be a part of the reservation, the appellants to irrigate lands then a part of

the public domain. In neither instance is it alleged that any portion of the lands proposed to be irrigated had then been entered upon, or taken up, or occupied, or possessed, or claimed, by any one; or that the lands were then, or since have become, subject to such a use. So far as anything is made to appear to the contrary, the lands proposed to be irrigated by the appellants were, when their application was filed, "at the hour of twenty minutes after nine o'clock in the forenoon" on the very day upon which the reservation was opened, and still are, a part of the public domain, unentered, unoccupied, unsettled, and unclaimed. It is alleged, and we may judicially notice, when the reservation was opened and the unallotted lands thereof restored to the public domain; but it is not alleged, nor can we judicially know, that the particular lands proposed to be irrigated were when the appellants filed their application, or since have been, occupied, claimed, or possessed by any one.

So far, then, as made to appear by the complaint, it is shown that, when the applications to appropriate the water were filed, the beneficial use for which the water was proposed to be appropriated did not then exist, but was, by both parties, contemplated and anticipated in the future. That is, we may well assume that, when the applications were filed, both parties contemplated and anticipated that within the time fixed by the engineer for the construction of the works and the diversion of the water, and by the time such works were completed, the water diverted and conducted upon "the lands proposed to be irrigated," such lands would then be claimed, occupied, and possessed by some one entitled to claim and occupy them, and thus the water could, and would, be applied to the beneficial purpose of the proposed appropriation stated in the applications. May an application be made to appropriate water for a beneficial purpose so contemplated in the future? We confess that the question is open to debate, and is not free of doubt. We have, however, with some hesitancy, reached the conclusion that such an application may properly be made when it

is made in good faith and with an actual bona fide **7**
intention and a present design to appropriate the
water for a beneficial use, though contemplated in the future,
and when it is not made for the purposes of mere speculation
or monopoly. That the applications were made by the respondents with an actual bona fide intention to appropriate
the water for a beneficial purpose is not questioned, nor are
their good intentions assailed in any other particular, except by the claim made that they could not lawfully initiate
or acquire any right in and to the use of the water until the
reservation was actually opened. The three principal elements to constitute a valid appropriation of water, and, as
stated by the court in the case of *Low v. Rizor,* 25 Or. 557,
37 Pac. 82, and approved by the same court in the case of
the *Nevada Ditch Co. v. Bennett,* 30 Or. 59, 45 Pac. 472,
60 Am. St. Rep. 777, are: "(1) An intent to apply
it to some beneficial use; (2) a diversion from the **8**
natural channel by means of a ditch, canal, or other
structure; and (3) an application of it within a reasonable
time to some useful industry." Says Mr. Kinney, in his
work on Irrigation (section 151): "There must be, first
some actual beneficial purpose existing at the time, or contemplated in the future, as the object for which the appropriator is to use the water." The same doctrine is also stated
in Black's Pomeroy on Water Rights, section 48. In *Nevada Ditch Co. v. Bennett, supra,* is was said:

"The general purpose of an appropriation is to utilize the water in
the arid regions, where the supply is limited, for the development and
advancement of beneficial industries. In many localities where the water
is difficult of diversion, and the expense considerable in conducting it
to the place of use, if individual landholders, or even an aggregation of
them, were required to make the appropriation for use upon their own
possession, these general purposes would be entirely defeated simply for
the reason that such holders could not bear the burden of making the
appropriation. In such cases, other persons possessing capital are often willing to make the diversion for the benefit of those who have use
for the water, but, unless they may contemplate a use which may be
applied by the landowner to his possessions, they could not even initiate the appropriation until they had possessed themselves of lands
in proportion to the amount of water it is desired to appropriate; so

that if the user must be the appropriator, and the appropriator the landholder, the arid regions in many places would remain arid, whereas otherwise they could be made to teem with fertility. No sufficient reason has been suggested why the contemplated use may not be for and upon the possessions of a person other than the appropriator. The authorities we have seem to support the rule that it can be, and we believe it is, correct upon principle. We take it, therefore, that the bona fide intention which is required of the appropriator to apply the water to some useful purpose may comprehend a use to be made by or through another person, and upon lands and possessions other than those of the appropriator. Thus the appropriator is enabled to complete and finally establish his appropriation through the agency of the user."

Of course, we are not unmindful that what was said by these writers and courts was with respect to appropriations not regulated by statute. But we think the filing of a written application with the state engineer, as required by the statute, is but declaring, or the giving of a notice of, an intention to appropriate unappropriated public water. The final step, and the most essential element, to constitute a completed valid appropriation of water, is the application of it to a beneficial purpose. Whatever else is required to be or is done, until the actual application of the water is made for a beneficial purpose, no valid appropriation has been effected. This was so before the statute, and it is still so under the statute. The filing of the application with the state engineer, as required by the statute, does not establish an appropriation of water. It but takes the place of, and is, the preliminary notice of intention to appropriate. Unless the construction of the works are commenced and completed within the time allowed by the engineer, and the water diverted and applied to the beneficial purpose of the proposed appropriation, the filing of the application is for naught, and no completed valid appropriation has been made. If, therefore, an application is made with a present design and an actual *bona fide* intention to appropriate unappropriated public waters for the irrigation of certain designated lands, a beneficial purpose, at a time when the applicant has no present right, title, or interest in or to the lands proposed to be irrigated there-

with, and, too, when such lands are then unoccupied and unclaimed and a part of a reservation, but it fairly is made to appear that when the proposed diverting channels and work prosecuted with reasonable diligence and dispatch are completed within the time fixed by the statute, or allowed by the engineer, the lands may then be lawfully claimed and occupied, and the water applied to the beneficial purpose for which the appropriation is proposed, we see no good reason why the application should not be received and the applicant protected in his inceptive right. One filing an application under such circumstances, commencing the construction of the works within six months from the approval of his application, prosecuting such proposed works to a completion within the time fixed by the statute or allowed by the engineer, and incurring the necessary expense to divert and conduct the water to the lands proposed to be irrigated, takes the risk that when such works are so completed, and the water diverted and conducted to such lands, they may then be lawfully claimed and occupied by some one who is willing to take the water and use it and apply it to the beneficial purpose for which the application was made to appropriate it. Bearing in mind that an appropriation of the waters as here proposed by the applicants is not made until the waters have been applied to the beneficial purpose for which the proposed appropriation was applied for, the irrigation of certain designated lands, if, when the diverting channels and works, prosecuted with reasonable diligence, are completed, the water may not then lawfully be used on such lands because they remain and still are a part of the reservation, or of the public domain, unclaimed, unsettled, and unoccupied, or if the lands have since been restored to the public domain, and since have been lawfully claimed, occupied, and possessed, but such persons so occupying and possessing the lands refuse to take or use the water thereon or to apply it to the beneficial purpose for which the appropriation applied for, the application, and the construction works, and the moneys expended thereon by the applicant are for naught. In other words, if the proposed ap-

propriator is not able to complete and finally establish his appropriation by applying the water to, and using it for, the beneficial purpose for which it was proposed to be appropriated, either by himself or through the agency of some user, his appropriation fails. He may not file his application, construct his works, and then hold the water and wait for something to happen. He cannot withhold the water from the proposed beneficial use. He must not only be diligent in constructing the works, and in making the diversion, but he must also be reasonably diligent and expeditious in making application of the water to the beneficial use for which the appropriation was proposed, else he loses his inceptive right. His appropriation will be measured by the quantity of water actually used for the proposed beneficial purpose.

We are of the opinion that, upon the face of the complaint, it is not made to appear that the engineer wrongfully or erroneously approved the defendant's applications, which were prior in time. However, should we be in error in holding that an inceptive right in and to the use of unappropriated public water upon or within a reservation can be initiated or acquired after the issuing of the proclamation, but before the reservation was actually opened and the lands subject to entry, settlement, and disposition, a contrary holding would not materially aid the cause of the appellants for the reasons hereinbefore suggested. And since the appellants, if entitled to recover, must do so upon the strength of their own right or title, and not upon the weakness of that of their adversaries, it again follows that the demurrer was properly sustained.

We are therefore of the opinion that the judgment of the court below ought to be, and it therefore is, affirmed, with costs. Such is the order.

FRICK and McCARTY, JJ., concur.