## PATTERSON v. RYAN.

No. 2099. Decided April 27, 1910 (108 Pac. 1118).

1. WATERS AND WATER COURSES—APPROPRIATION—EXTENT OF RIGHTS. Plaintiff's intestate in 1901 took possession of land surrounding springs on arid and unsurveyed public land, erected a cabin, constructed a corral, and fenced in a few acres. Until his death in 1905, he maintained the corral and fences, and a portion of time each year lived in the cabin and while living there used the water for culinary purposes and to water a team and saddle horse, but never used it for irrigation. Prior to 1901 sheep and cattle men used the water, and thereafter intestate occasionally required the sheep men to pay for the water while the cattle men used it without, but neither disputed nor interfered with intestate's right to use the water. Defendant, a cattle man, watered his cattle at the springs for a number of years. Held, that intestate, although he might have been a trespasser on the land, acquired the right to use the quantity which he used, and, although he posted no notice that he intended to appropriate the water in accordance with the law in force in 1901, the notice and record thereof being merely prima facie evidence that the person giving the notice was applying the water to some beneficial use, so that plaintiff had the right to use the quantity of water used by intestate, and even if he had no right in the land surrounding the springs, he could divert it to some other place, if possible. (Page 414.)

2. WATERS AND WATER COURSES—APPROPRIATION—NATURE AND EXTENT OF RIGHTS. Trespassers upon land may acquire the exclusive right to the use of water either to irrigate land or for other purposes, and, when such right is acquired, it is paramount to the rights of the true owner or claimant of land, and the water claimant, when he is dispossessed of the land, may divert and use the water elsewhere, if he can so do it.[1] (Page 415.)

Appeal from District Court, Fifth District; *Hon. Joshua Greenwood,* Judge.

Action by Edward Patterson, as administrator of John Patterson, deceased, against John Ryan.

Judgment for defendant. Plaintiff appeals.

REVERSED AND REMANDED.

[1] Sullivan v. Mining Co., 11 Utah, 438, 40 Pac. 709, 30 L. R. A. 186.

*William F. Knox* for appellant.

*E. W. Senior* and *Allen T. Sanford* for respondent.

FRICK, J.

This action was brought by appellant, as administrator of the estate of one John Patterson, deceased, to quiet title to the use of the water flowing from certain springs known as the Potsum Pah springs, situate in Pine Grove Valley, Beaver County, Utah.

The facts which we deem material, as developed at the trial, in substance, are: That the land on which the springs in question are situated is arid, and up to the time that this action was commenced continued to be unsurveyed public domain. In the year 1896 one Thomas McCune filed a desert entry on the lands surrounding the said springs, constructed one or two small reservoirs to hold the waters flowing therefrom, and thereafter placed troughs at the springs, conducted the water into them, and used the same to water live stock; that said desert entry was contested, and in August, 1903, was duly canceled by the local United States Land Office, and the action of the local office was approved by the Commissioner of the General Land Office at Washington, D. C., on the 19th day of January, 1905, and said McCune by said decision forfeited all rights under his desert entry aforesaid. In March, 1901, and while the desert entry of said McCune was still, *prima facie* at least, in force, but when said land and springs were seemingly abandoned and the water flowing from said springs was not being used by any one except as hereinafter stated, the deceased, John Patterson, took possession of the lands surrounding the springs and of the springs, erected a log cabin 16x14 feet near said springs and constructed a corral, and fenced in a few acres of the land near the springs, and, in connection with the improvements aforesaid, he also cleaned out the reservoirs constructed by said McCune. Said Patterson died on the 4th day of January, 1905. From March, 1901, to the time of his death, he maintained the corral and fences aforesaid, and a portion of the time during each year stayed

in the cabin aforesaid, and at such times he used the water from the springs for his culinary needs and to water "a team and saddle horse," which the testimony shows he kept with him when staying in said cabin. While Patterson fenced in some land which the testimony shows could have been irrigated, it is clear that he never planted any crops or used any water for irrigation, except what by force of gravity ran over a portion of the inclosed lands where some "salt grass" was growing. The testimony also shows that for many years prior to 1901 both the sheep men and cattle men used the water of the springs to water their flocks and herds when they were ranging in the vicinity of the springs in the winter season; that in 1901, and for several seasons and at various times the deceased, Patterson, would require the sheep men to pay him something for watering their sheep at the springs. The number of times that such charges were made is not clear, but it did not occur very often. Some of the sheep men, however, used the water to water their sheep at times during the years aforesaid without paying the deceased, or without asking him for the privilege to do so, and the cattle men, it appears, used the water from the springs without paying the deceased anything, but neither the sheep men nor the cattle men after March, 1901, disputed or interfered with the deceased's right to use the water for the purposes he used it as aforesaid. The defendant was one of the principal cattle men who watered cattle at the springs for many years in the manner aforesaid, but he apparently had no special rights in the water of the springs up to the time this action was commenced, except to use it for his cattle, as above stated. There is much evidence in the record relating to entries of the lands surrounding the springs in question and the proceedings in the United States Land Office relative thereto, all of which we deem immaterial. The evidence is conclusive that the deceased at the time of his death had no right in or to the lands surrounding the springs or any lands in their vicinity, but both the legal and the equitable title to all of said lands was in the United States at the time aforesaid and when this action was commenced. After the death of

said Patterson, to-wit, on the 26th day of December, 1905, the defendant filed his application to appropriate the water of said springs with the state engineer of the State of Utah in accordance with chapter 108, Laws Utah 1905, but the state engineer, just before the time this action was commenced, rejected said application, and the defendant did not within the time, nor as provided by said chapter, bring an action in any court to review the action of said state engineer in rejecting said application, but he did set forth the facts with respect to said application and the rejection thereof in this action in the nature of a counterclaim.

Upon substantially the foregoing facts, the court found in favor of the defendant, and found that the said John Patterson, deceased, had acquired no rights to the use of the water of said springs or any part thereof, and adjudged the right to the use of the water thereof to be in the defendant. The administrator appeals from the court's findings and judgment.

Counsel for appellant urge that, in view of the undisputed facts, the court erred in its findings and judgment in so far as it adjudged that the plaintiff, as the administrator of the estate of said John Patterson, deceased, was not entitled to the use of the water of said springs, and also in its findings and judgment that said defendant was entitled to the use of said water. It seems to us that the court laid too much stress upon the question of the right of possession or ownership of the lands surrounding the springs. Even if it be assumed that some one of the different parties who at some time claimed some rights in said land at one time had some equitable right or title thereto, yet the evidence is conclusive that no one ever used, or attempted to use, the water on said land for irrigation or for the purpose of producing crops of any kind thereon, not even grass for pasture. In view of this fact, any one claiming the legal right to use said water had to base that right upon a use and for a purpose other than irrigation. While the evidence shows that both the sheep men and the cattle men, among whom was the defendant, used the water of said springs for many years

prior to the spring of the year 1901 when the deceased took possession thereof, yet this use was not an appropriation of the waters of said springs, and was not so intended, since it merely consisted in driving their flocks and herds to the springs for water the same as they might have done to any other stream or water which was suitable to water live stock. Moreover, the use of the water as aforesaid was merely sporadic and intermittent, and the quantity of the water used was so uncertain that under the evidence it would be impossible to determine the quantity of the water the defendant would be entitled to if it were found that, by reason of the foregoing facts, he at the time of said Patterson's death was legally entitled to claim any rights to the use of said water. It seems to us that the right of the deceased to the use of at least a portion of said water as against the defendant is based upon more substantial ground. As we have seen, when the deceased took possession of the springs, no one was using the water except that both sheep and cattle men during certain portions of the year in the manner before stated drove their sheep and cattle to the springs. Again, it is made to appear that whatever rights Mr. McCune had in the use of said water, if any, he in effect surrendered (not transferred) to the deceased in 1902, and, after that time, it seems McCune made no further use of the water, or claim thereto, and his desert entry was canceled in 1903 by the United States Land Office, and he never appealed from that decision. Was it necessary for the deceased, Patterson, to have some right or title in and to the lands surrounding the spring, or any land upon which he applied the water for the purpose of irrigation, or, if he did not so apply the water, was he required to post notices under the law in force in 1901 that he intended to and did appropriate the water flowing from said spring for a specific purpose before he could acquire the legal and exclusive right to the use of all or any portion of said water? The right to the use of water in this state has always depended upon whether the person claiming the water applied it to a beneficial use, and the notice and record required by the statute was merely *prima*

*facie* evidence of the facts recited therein, namely, that he was applying the water to some beneficial use. Any person, however, who actually used the water for a useful or beneficial purpose, acquired the right to take the water so used as against all subsequent claimants, regardless of whether the user had posted notices or not. Again, in so far as using the water for irrigation is concerned, the exclusive right to use certain waters in this state has always been independent of and separate from the ownership of the land on which the water was used or the ownership of any land. To this effect is the case of *Sullivan v. Mining Co.*, 11 Utah, 438, 40 Pac. 709, 30 L. R. A. 186. The authorities generally support this view. (Weil Water Rights, etc. [2 Ed.] section 63.) But the authorities are to the effect that even trespassers upon land may acquire the exclusive right to the use of water that is used either to irrigate such land or is used thereon for other purposes, and that such a right, when once acquired, is paramount to the rights of the true owner or claimant of the land, and the water claimant, when he is dispossessed of the land, may divert and use the water elsewhere than on the land if he can so divert and use it. (*Smith v. Logan,* 18 Nev. 149, 1 Pac. 678; *Alta Land, etc., Co. v. Hancock,* 85 Cal. 219, 24 Pac. 645, 20 Am. St. Rep. 217; *Santa Paula Waterworks v. Peralta,* 113 Cal. 38, 45 Pac. 168.)

In the California cases some distinction is made on account of riparian rights, which distinction, however, does not militate against or affect the principle just stated. The deceased, therefore, although he may have been a trespasser on the land, still had a right to appropriate and use the water from the springs in his cabin for culinary purposes, and for the purpose of watering his team and saddle horse. That he used a certain amount of water from said springs during a portion of each year from March, 1901, until the time of his death, January 4, 1905, no one disputes, and no one seems to have questioned his right to do so. Is there any doubt that the use the deceased made of the water was a beneficial use within the meaning of that term? We think

not. If, therefore, the deceased commenced the use of the water from the springs at a time when he had a right to appropriate the water, or any part thereof, and if he applied it to a beneficial or useful purpose, why was he not at the time of his death entitled to so much of the water of said springs as he had appropriated and used for such purpose? Counsel for respondent, as we understand them, do not assert the contrary, except to claim in a general way that the deceased never acquired any right to use the water or any part thereof. In view of the evidence, we are unable to see upon what this claim rests. If, as the court seemingly concluded, the defendant could acquire some right to the use of the water of the springs by merely intermittently and at long intervals driving his cattle to drink the water, why could not the deceased acquire a right to at least a portion of said water by making a daily use of it for a beneficial purpose for a portion of each year for a term of years? In our judgment the defendant's use of the water was too intermittent and uncertain either as to time or quantity to prevent the deceased from acquiring a right thereto, and, for the same reason, we think the cliam to the water by appellant by reason of the fact that the deceased on different occasions required the sheep men to pay him for the use of the water in watering their flocks is too uncertain a use to authorize a court to find and adjudicate that the appellant has any right to the water by reason of what the deceased did or claimed in that regard. The number of times that the deceased exacted pay from the sheep men was comparitively small at best, and did not occur in every year, or always while the deceased was on the land near the springs. Nor did he ever exact pay from cattle men, nor from all the sheep men, although it appears from the evidence that quite a number of them watered their cattle and sheep at the springs during a part of the time when the deceased stayed in his cabin near the springs. It also appears from the evidence that neither the deceased nor his team and saddle horse were present at the springs or used the water as aforesaid, except during a portion only of each year commencing with March,

1901, and ending January 4, 1905, when the deceased died. Just what the exact time was does not appear, and is not found by the court, except the finding that the deceased used the water as aforesaid "a few months each year." Nor did the court find how much water in quantity, or what proportion of the springs the deceased used as aforesaid.

In view of all the facts and circumstances, we are of the opinion, therefore, that the appellant as administrator is entitled to a specific finding with respect to the quantity or proportion of the water from the springs that the deceased used for culinary purposes and to water his team and saddle horse, and the length of time that the water was used for those purposes each year from 1901 to 1905, and, when said quantity and time of use is ascertained, the appellant is entitled to a decree awarding him for the benefit of said estate the quantity of water so found for the time aforesaid. If it be found that the appellant has no right to use the water for the purposes aforesaid, or for any beneficial purpose, on the land surrounding the said springs, then he may, nevertheless, use the water in the quantity that it is found the deceased used it, and for the time that he used it, by diverting it to some other place if appellant can do so. (*Smith v. Logan, supra; Santa Paula Waterworks v. Peralta, supra.*) If appellant, however, has no right to use the water at or near the springs as the deceased used it, and if he will not divert and use it elsewhere or dispose of it to some one who will use the same, then appellant at some time in the future may be deemed to have abandoned the right to the use of the water the same as any one else would be deemed to have abandoned rights by nonuser.

From what has been said it follows that the district court erred in its application of the law to the facts of this case. In view of the unsatisfactory state of the evidence upon the two questions, namely, the amount of water that the deceased, Patterson, used for culinary purposes and for his team and saddle horse, and the season or the length of time he so used it during each year, we are unable either to direct

findings or to make any upon those questions. Since there must be findings upon these two questions before the case can be finally determined, nothing remains for us to do except to reverse the judgment, and to remand the cause for a new trial, with directions to the district court to proceed with the case in accordance with the views contained in this opinion. It is so ordered, appellant to recover costs.

STRAUP, C. J., and McCARTY, J., concur.