JENSEN et al. v. BIRCH CREEK RANCH CO. et al.

No. 4775.   Decided July. 15, 1930.   (289 P. 1097.)

*Wm. B. Higgins,* of Fillmore, for appellants.

*Stewart, Alexander & Budge,* of Salt Lake City, for respondents.

ELIAS HANSEN, J.

In this proceeding the plaintiffs seek both equitable and legal relief. The state of Utah seeks no relief, filed no pleadings, and took no part in the trial court, and does not appear in this court. When, in this opinion, we mention the defendants, we mean the defendants other than the state of Utah. The defendants seek affirmative equitable relief. Plaintiffs allege in their complaint that they are the owners of the

right to use a stream of 5 cubic feet per second of the water of Trout creek, and that the defendants during the years 1920, 1921, 1922, and 1923 wrongfully deprived plaintiffs of the use of such water to their damage. A separate cause of action is founded upon the alleged wrongful acts of defendants in depriving plaintiffs of the use of the water during each of the four years. There are thus four causes of action set up in plaintiffs' complaint. Plaintiffs pray for a money judgment against the defendants and for a decree quieting their right to the use of the water in controversy. In their answer defendants deny generally the allegations of plaintiffs' complaint. As a further defense and as a cross-complaint defendants allege that they are the owners and entitled to the use of the irrigation water claimed by the plaintiffs. Defendants pray that plaintiffs take nothing by their complaint, and that the rights of the defendants to the use of the water in controversy be quieted in them. Upon the issues thus joined, a trial was had to the court sitting without a jury. Findings of fact, conclusions of law, and judgment were made and entered. The judgment fixes the rights of the parties to the use of the water in dispute, denies plaintiffs any relief by way of damages, and directs that neither party be awarded any costs. Plaintiffs appeal, and here seek a reversal or modification of the judgment appealed from.

We shall first dispose of that part of the judgment which fixes the rights of the parties to the use of the water in dispute. The water which forms the subject-matter of this controversy is the natural flow of Trout creek and Birch creek. Both of these natural creeks rise in the Ibapah Mountains in Eastern Nevada, and flow in a southeasterly direction into Snake Valley, Juab county, Utah. As the two streams flow into and through Snake Valley, they run almost parallel and within a distance of about one-fourth mile from each other. The amount of water which flows in each of the two creeks fluctuates considerably from month to month and from year

to year. During the months of May and June the total amount of water flowing in the two creeks often reaches as much as 60 or 70 cubic feet per second. In the late summer the water recedes so that at times there is not to exceed 2 or 3 cubic feet per second. The flow of Birch creek is more regular and constant than is the flow of Trout creek.

The land upon which the plaintiffs claim the right to use the water in controversy consists of 320 acres situated in sections 3 and 4, Tp. 13 S., Rg. 17 W., Salt Lake meridian, in Juab county, Utah. It is made to appear that practically all of plaintiffs' land is susceptible of irrigation.

The land upon which the defendant Neff Bros. Land & Livestock Company claims the right to use some of the water in controversy consists of 600 acres situated in sections 13 and 14, Tp. 13 S., Rg. 18 W., Salt Lake meridian, in Juab county, Utah. This land is known as the Trout creek ranch.

The land upon which the defendant Birch Creek Ranch Company claims the right to use some of the water in controversy consists of about 400 acres situated in sections 13, 14, 22, 23, and 24, Tp. 13 S., Rg. 18 W., Salt Lake meridian, in Juab county, Utah. This land is known as the Birch Creek ranch. The land upon which the defendant Annice Parker claims the right to use some of the water in controversy consists of 82.40 acres situated in section 14, Tp. 13 S., Rg. 18 W., Salt Lake meridian, in Juab county, Utah. Only a part of the land owned by the defendants has been irrigated. The claim of the plaintiffs to a flow of 5 cubic feet of water per second from Trout creek is based upon an approved application on file in the office of the state engineer of Utah. On June 22, 1915, plaintiffs filed with the state engineer of the state of Utah application No. 6437 to appropriate, during the period from May 1st to August 15th of each year, 5 cubic feet per second of the water of Trout creek. The state engineer approved plaintiffs' application on February 23, 1916. Pursuant to their application plaintiffs constructed a dam across the natural channel of Trout creek at a point

about 4,000 feet south and 800 feet west of the southwest corner of section 34, Tp. 12 S., Rg. 17 W., Salt Lake meridian, in Juab county, Utah. Plaintiffs also constructed a ditch leading from the dam to their land.

The defendants base their claim to the right to the use of the water of Trout creek and Birch creek upon the alleged diversion and use of such water for irrigation purposes by themselves and their predecessors in interest since prior to the year 1887.

The court below awarded to the defendants the right to the use of all of the water of Birch creek, and a first and prior right to the use of 10.4 cubic feet per second of the water of Trout creek, and awarded to the plaintiffs, subject and secondary to the rights of the defendants, the right to use 5 cubic feet per second of the water of Trout creek. Of the water so decreed to the defendants, the defendant Neff Bros. Land & Livestock Company was awarded 14/28, the defendant Birch Creek Ranch Company was awarded 12/28, and the defendant Annice Parker was awarded 2/28. The plaintiffs contend that the primary water right decreed to the defendants is excessive, and that the evidence does not support an award of so large a quantity of water to the defendants. Plaintiffs also contend that the water of Birch creek was not involved in this controversy, and that the trial court was without jurisdiction to enter any decree affecting the rights to the use of the water of Birch creek. Complaint is also made by the plaintiffs that they were not awarded a money judgment and their costs.

A proceeding to quiet title to the right to the use of water is a suit in equity and not an action at law. In reviewing that part of the judgment which fixes the rights of the parties to the water in dispute, we are required to pass upon both questions of law and of fact. Article 8, § 9, Constitution of Utah. That the defendants have rights prior to the rights of the plaintiffs to the use of some of the water in dispute is not questioned. The question that

divides the parties is the quantity of water that the defendants are entitled to receive before the plaintiffs are entitled to the water applied for by them. The quantity of water that an appropriator of water for irrigation purposes is entitled to have decreed to him, when his right is brought in question, depends in great part upon the amount of land that such appropriator has irrigated with the water diverted. Generally, the greater the area to be irrigated, the greater will be the quantity of water required. In this case there is a conflict in the evidence as to the amount of land that the defendants and their predecessors in interest have irrigated with the water which they have diverted from Trout creek and Birch creek. The trial court made no finding on that issue. Plaintiffs called a number of witnesses who testified as to the number of acres of land that defendants' predecessors in interest were cultivating and irrigating with the water of Trout creek and Birch creek prior to 1903. The witnesses so called by the plaintiffs all placed the total amount of land so cultivated and irrigated in 1903 and prior thereto at less than 100 acres.

In 1917 the Neff Bros. purchased the Trout Creek ranch and the Birch Creek ranch. Samuel Neff was placed in charge of the ranches, and for a number of years managed both ranches. He testified that when they purchased the ranches, there was under irrigation on the Birch Creek ranch between 200 and 220 acres. Of the land so irrigated about 125 acres were under cultivation, and between 75 and 95 acres were in meadow. He further testified that, when Neff Bros. purchased the ranches, there were about 200 acres or probably a little more under irrigation on the Trout Creek ranch. Since 1917 more land has been brought under cultivation on both ranches. A number of witnesses testified that the water which was diverted from Birch creek and Trout creek was used to irrigate not only cultivated land but also land which was not cultivated. The purpose of irrigating the land not under cultivation was to provide grazing and hay for the cattle and horses which

were owned by those who thus irrigated the uncultivated land. Some of the land so irrigated was in private ownership, and some was a part of the public domain. It appears from the record before us that it was not until recently that a survey has been made of the land upon which the water of Trout creek and Birch creek has been used. It is urged on behalf of plaintiffs that the present rights of the defendants to the use of the water in dispute is fixed and determined by the amount of water that is necessary to irrigate the land that was owned and was being irrigated by the defendants or their predecessors in title at or before the time that chapter 100, Laws of Utah 1903, became the law of this state. Such contention is not entirely correct. One may appropriate water for irrigation purposes without owning the land upon which the water has been, or is about to be, applied. *Manning* v. *Fife*, 17 Utah 232, 54 P. 111; *Sowards* v. *Meagher*, 37 Utah 212, 108 P. 1112; *Patterson* v. *Ryan*, 37 Utah 410, 108 P. 1118; *Lake Shore Duck Club* v. *Lake View Duck Club*, 50 Utah 76, 166 P. 309, L. R. A. 1918B, 620; Kinney on Irrigation (2d Ed.) Vol. 2, Chap. 38. Moreover, any one who had initiated a right to appropriate water before the act of 1903 took effect was by the act permitted to perfect such right under the law as it existed before the act of 1903 went into effect. Since chapter 100, Laws of Utah, 1903, became the law of this state, its provisions must be complied with to perfect an appropriation of public water. *Deseret Live Stock Co.* v. *Hooppiania*, 66 Utah 25, 239 P. 479. It is also the settled law in this jurisdiction that a prior appropriator of water from a natural stream may not so increase his demand and use of the water appropriated by him as to deprive a subsequent appropriator of any right which he may have acquired before such increased demand and use is made by a prior appropriator. *Becker* v. *Marble Creek Irrigation Co.*, 15 Utah 225, 49 P. 892, 1119. The evidence as to the amount of land that was being irrigated by defendants' predecessors in interest with the water of Birch creek and Trout creek in 1903 and prior thereto is somewhat

vague and uncertain. Most of the witnesses called by the plaintiffs had no intimate knowledge of the area that was being irrigated. Their testimony, for the most part, was directed to the amount of land that was under cultivation rather than the amount of land that was irrigated. It is reasonably clear that in 1917 there was slightly more than 400 acres of the land now owned by the defendants under irrigation. It is also reasonably clear that the area irrigated was increased somewhat between 1903 and 1917, but the amount of such increase is not so clear. The defendants claim that they are entitled to a first and primary water right to irrigate 400 acres of land, and, after a careful review of the evidence, we have concluded that such claim is approximately in accord with the fact.

Having reached the conclusion that the defendants are entitled to a first and primary water right for 400 acres of land, it remains to be determined what amount of water is necessary to irrigate such land. Upon this phase of the case two witnesses testified. Samuel Neff, who has managed the farming operations of both ranches for a number of years, testified that a flow of one cubic foot per second would properly irrigate 70 acres of defendants' land. A. Z. Richards testified as an expert for the defendants. He is an engineer by profession. He has had experience as a hydraulic engineer and in the use of water for the irrigation of land. A number of measurements of the flow of Trout creek and of Birch creek were made by Mr. Richards to determine the amount of loss by seepage and evaporation of the water flowing in these two creeks between various points on the creeks. He testified that in his opinion it would require annually between 5 and 6 acre feet of water per acre to properly irrigate defendants' land. He explained that the irrigation season in that part of the state extends over a period of seven months, that the rainfall in that section is very light, and that, because defendants' land is near the Great American Desert, the evaporation from such land

is more than from most land within this state. If we accept the testimony of Samuel Neff, the defendants' land requires a stream of slightly less than 6 cubic feet per second to properly irrigate it. If we accept the testimony of Engineer Richards, we arrive at approximately the same results. A constant flow of 6 cubic feet per second for a period of seven months or 213 days will amount to approximately 2,556 acre feet, or 6.4 acre feet per acre for 400 acres.

It is made to appear that many years ago defendants' predecessors in interest constructed a ditch from Trout creek to Birch creek, and coursed the water through the ditch so constructed from Trout creek into Birch creek. The commingled water was then conveyed down Birch creek to the lands now owned by the defendants. This method of regulating the water of Birch creek and Trout creek continued up to the time of the trial. The evidence shows that there is a substantial loss of water as it courses down both Trout creek and Birch creek. The loss in Trout creek is greater than the loss in Birch creek. Defendants contend that they should be awarded a large quantity of water in the early part of the irrigation season because in the late seasons the amount of water flowing in both Birch and Trout creeks is very small. There is nothing in the evidence to justify the conclusion that the application of an abundance of water in May will be any material aid to the crops which may be growing on defendants' land in August or September. The judgment appealed from awarded a flow of 10.4 cubic feet per second of the water of Trout creek and all of the water of Birch creek to the defendants. The evidence shows that at times as much as 30 second feet of water flows down Birch creek. Clearly a flow of 40 cubic feet of water per second cannot be put to a beneficial use on 400 acres of land. A duty of one cubic foot of water per second to irrigate 10 acres of land is unheard of in this state. It further appears that during May and June of the normal year there is more water than is necessary to supply all reasonable demands of both the plaintiffs and the defendants.

After a careful review and consideration of the evidence, we have concluded that the judgment fixing the rights of the parties to the use of the water involved in this controversy should be amended in the following particulars: The defendants should be awarded a flow of 6 cubic feet per second from the water of Trout creek and Birch creek for the irrigation of their land; the right to the use of such quantity of water to be a first and primary right, and not until the defendants have been supplied with a flow of 6 cubic feet per second should the plaintiffs be entitled to any of the water for which they have applied. The water to which the defendants are entitled should be determined by measuring the water where it is diverted from the natural channel or channels of Trout creek and Birch creek. So long as the water of Trout creek is diverted into Birch creek, the defendants are entitled to the use of 6 cubic feet per second measured at the point where such water is diverted from Birch creek. When the total flow of Birch creek and Trout creek exceeds 6 cubic feet per second as thus measured, the plaintiffs are entitled to such excess not to exceed, however, a flow which will make a stream of 5 cubic feet per second at the point where the plaintiffs have constructed the dam to divert the water from Trout creek into their irrigation ditch. The water to which the plaintiffs are entitled is subject to their completing the appropriation under their application as provided by law. The defendants should be required to construct and maintain measuring devices at the place or places where they divert the water from the natural channel or channels so that the water to which they are entitled may be properly measured. A commissioner should be appointed to measure and distribute the water to the persons entitled thereto according to their respective rights. The plaintiffs should pay five-elevenths and the defendants six-elevenths of the compensation of the commissioner so appointed.

There is no merit to the claim that the court was without jurisdiction in this proceeding to fix the rights of the defen-

dants to the water of Birch creek. For several years the water of the two creeks has been commingled. They have been regulated as one stream. The rights of the defendants in and to the water of Trout creek are dependent upon the quantity of water available from Birch creek. The plaintiffs make no claim to the water of Birch creek, and therefore they cannot be prejudiced by an adjudication of the water of that creek.

This brings us to a consideration of plaintiffs' assignments of error which are directed against that part of the judgment which denies them any money judgment. Plaintiffs have 94 assignments of error, most of which are based upon alleged errors of the trial court in the admission and rejection of evidence. Plaintiffs' first and second causes of action for money judgments may readily be disposed of. These two causes of action are founded upon the alleged wrongful acts of defendants in depriving the plaintiffs of irrigation water during the years 1920 and 1921. The defendant Neff Bros. Land & Livestock Company was not incorporated until December 12, 1921. Defendant Birch Creek Ranch Company was not incorporated until November 22, 1922. There is no evidence whatsoever that the defendant Annice Parker had anything to do with depriving the plaintiffs of any of the water claimed by them. The plaintiffs have failed to show that any of the defendants committed any wrong against them during either the year 1920 or 1921. No facts are alleged in plaintiffs' complaint and no evidence was offered at the trial that would support a judgment against the defendants or either of them for any invasion of plaintiffs' rights before the defendant corporations came into existence. Upon this record there is no evidence that will support a money judgment against the defendants or either of them on plaintiffs' first and second causes of action.

Before the plaintiffs in this cause are entitled to a money judgment against the defendants or either of them, it must

be made to appear, among other things, that the plaintiffs were at the time complained of wrongfully deprived of the use of some of the water of Trout creek. Until the rights of the parties to this proceeding in and to the waters in dispute are determined, it is impossible to say whether or not the plaintiffs have any just cause to complain because they did not receive any water during the irrigation seasons of 1922 and 1923. The trial court having erred in awarding more water to the defendants than they were entitled to receive, it follows that the judgment in favor of the defendants and against the plaintiffs for the alleged damages for 1922 and 1923 must be reversed and a new trial granted. As to plaintiffs' third and fourth causes of action for a money judgment, the results might well have been different if the learned trial judge had not erred in awarding the defendants an excessive quantity of water.

During the course of the trial in the court below there seems to have been considerable confusion as to the proper measure of damages to be applied in the event plaintiffs should be entitled to recover a money judgment. Many of plaintiffs' numerous assignments of error grow out of this confusion. The correct rule as to the measure of damages in action such as plaintiffs' third and fourth causes will be found announced and discussed in the opinion of this court on a petition for rehearing in the case of *Cleary* v. *Daniels,* 50 Utah 505, 167 P. 825. In a suit to quiet title to a water right "costs may be allowed or not, and, if allowed, may be apportioned between the parties, on the same or adverse sides, in the discretion of the court." Comp. Laws Utah 1917, § 7038. The plaintiffs were properly defeated in two of their four causes of action for damages. The trial court did not abuse the discretion vested in it when it refused to allow plaintiffs costs.

From what has been said it follows that the following order should be, and it accordingly is made: This cause is remanded to the district court of Salt Lake county, with

directions to the court to amend its findings of fact, conclusions of law, and decree so that the rights of the parties in and to the use of the water of Trout creek and Birch creek will be quieted in accordance with the views herein expressed. The district court is directed to retain jurisdiction of the cause for the purpose of determining the kind of measuring devices that shall be installed for measuring the water of Birch creek and Trout creek, and for the purpose of directing when and how such measuring devices shall be constructed. The district court is further directed to retain jurisdiction for the purpose of appointing a water commissioner to measure and distribute the water of Trout creek and Birch creek until such time as the state engineer of Utah shall assume jurisdiction of the water of these creeks. See *Caldwell* v. *Erickson, District Judge et al.*, 61 Utah 265, 213 P. 182. The judgment denying plaintiffs the right to recover any judgment on their first and second causes of action is affirmed. The judgment denying plaintiffs a right to recover any money judgment on their third and fourth causes of action is reversed, and the district court is directed to grant a new trial as to those causes of action. Plaintiffs are awarded their costs on this appeal.

CHERRY, C. J., and STRAUP, EPHRAIM HANSON, and FOLLAND, J.J., concur.