JOHN HAGUE, RESPONDENT, v. NEPHI IRRIGATION COMPANY, APPELLANT.

1. *Complaint—Allegation of Title—Demurrer.*

Where the allegations of a complaint in a suit brought to determine the plaintiff's right to the use of water of a stream state, in general terms, a cause of action by alleging clearly and distinctly ownership, invasion of right, and injury, without distinct allegations of how plaintiff became the owner of a

water right, whether by appropriation, adverse user, or purchase, plaintiff's title can be shown by proof, and the allegations will be sufficient to withstand a general demurrer.

2. *Water—Appropriation of—Rights Acquired—Tests of—Subsequent Appropriator.*

Where a party diverts the water of a stream, the appropriation, intention of the appropriator, use and beneficial purpose are the tests which determine the rights acquired, and, if more water is diverted than is necessary for the beneficial purpose intended, the excess may be appropriated by a subsequent appropriator for a useful purpose.

3. *Same—Domestic Purposes—Manufacturing Purposes—Diversion of Water.*

Where parties have diverted the waters of a stream for domestic and irrigation purposes in larger quantities than necessary for their use, the owner of a mill may appropriate the excess for manufacturing purposes to an extent necessary for his use.

4. *Same—Place of Diversion—Change of.*

Where a prior appropriator of water merely changes the place of diversion, without causing injury to a subsequent appropriator, the subsequent appropriator has no cause of complaint, but, if the prior and subsequent appropriators are each entitled to a certain portion of the stream, neither can change the place of diversion so as to, injuriously affect the rights of the other.

5. *Findings of Fact.*

The failure to make a finding on an issue is not a reversible error, where the finding, under the facts and circumstances disclosed by the evidence, would necessarily have been prejudicial to the appellant, and the facts found are sufficient to sustain the decree.

6. *Evidence in Equity Cases—Determination of its Competency.*

In a cause in equity, when there is ample proof in the record, unassailed, to support and justify the findings and decree, it is not necessary for the appellate court to determine the competency of evidence which cannot affect the decree.

(No. 848.   Decided March 16, 1898.)

Appeal from the Fifth district court, Juab county. E. V. Higgins, *Judge.*

Suit by John Hague against the Nephi Irrigation Company. There was a decree for plaintiff, and defendant appeals. *Affirmed.*

*Moyle, Zane & Costigan* and *F. W. Chappell,* for appellant.

The use must be adverse.   28 Am. & Eng. Enc. 1005, and cases cited in notes; *Cox* v. *Clough,* 70 Cal. 345; *Alta Land Co.* v. *Hancock,* 85 Cal. 219.

But in this case the plaintiff had a mill on the stream. He simply passed through his mill race the water that came to him. He did not use it or take it away from the stream. The irrigating operations required some water to go down the stream to the ditches taken out below the mill. Plaintiff used the water as it passed. How was such use an invasion of defendant's rights?. It gave defendant no cause of action. It was not adverse to its use of the water. It was not a use defendant could prevent. Clearly, then, such use could not be the foundation of an adverse right.

It is also plain law that such use must not be permissive. *Ball* v. *Kehl,* 95 Cal. 606; *Boynton* v. *Longley,* 19 Nev. 69; *Felez* v. *Los Angeles,* 58 Cal. 73; *Bell* v. *Lanselito Co.,* 33 Pac. Rep. 449; *Coalter* v. *Hunter,* 15 Am. Dec. 726.

The Nephi Irrigation Company, having become the appropriators of the whole stream, gained the right to change the place of diversion to suit its convenience. Hague can claim nothing against this right, because he settled on the stream, with his mill partly below the point of diversion and partly above. *Fuller* v. *Swan River Co.,* 19 Pac. Rep. 836; *Greer* v. *Heiser,* 26 Pac. Rep. 770; *Ramelli* v. *Irish,* 31 Pac. Rep. 41; *Woolman* v. *Garringer,* 1 Mont. 535; *Kedd* v. *Laird,* 15 Cal. 161; *Davis* v. *Gale,* 32 Cal. 26.

It is the duty of the court to find upon all issues in the cause, and its failure to do so is error. *Phipps* v. *Harlan,*

53 Cal. 87; *Swift* v. *Canavan*, 52 Cal. 417; *Billings* v. *Everett*, 52 Cal. 661; *Baggs* v. *Smith*, 53 Cal. 88; *Roeding* v. *Perasso*, 62 Cal. 515.

*Thurman & Wedgewood,* for respondent.

This is a controversy over the use of the water of Salt creek, in the town of Nephi, the plaintiff claiming the right to the use of a certain portion thereof for manufacturing purposes, and the defendant the right to divert a part of such portion, for the purposes of irrigation, before its subjection to the plaintiff's use. It appears from the testimony that in 1851 the town of Nephi was settled by 19 families, and in the following year the water of Salt creek was diverted from its natural channel for culinary, domestic, and agricultural purposes. In 1852 one Baxter, plaintiff's predecessor in interest, built a gristmill, locating it on the stream above all the points where water had been diverted. The next year, on account of trouble with the Indians, the mill was moved into the town, and located on a ditch. In 1854 it was reconstructed, and it appears thereafter a right of way to carry water to the mill was obtained from the town, and about 1860 the mill race was moved from the ditch and connected with the stream. In this location the mill and its race have remained ever since. When the plaintiff became its owner two ditches for irrigation and culinary purposes had been taken out above the mill, but the water to supply it was permitted to flow down the stream, and, after passing through it, was diverted and used for the purpose of irrigating a large body of land. In 1862 the plaintiff became the owner of the mill property and the appurtenances by purchase. He then reconstructed the mill, as it now stands, but no particular change was made in the race, which was about 4 feet 10 inches wide on the inside,

and 2 feet in depth, and the water flowing therein about 18 inches deep. The inclination of the race remained the same ever since. At no time since 1862, except within the last 5 or 6 years, when the alleged wrongful diversions were made, was there more than one-third of the water of the stream diverted above the mill. Up to the time of such diversions there was always more water in the stream, except during July, August, and September of each year, than was necessary to run the mill. At least 15 inches in depth of water, flowing in the race, is required to operate it at full capacity. Prior to the alleged wrongs the owner could always run his mill to advantage, in the manufacture of flour, chop, etc., except that in some seasons, from July to October, a portion of the irrigation season, he could not run it at full head on account of scarcity of water. Before the commission of the alleged wrongs the defendant, it appears, never disputed the plaintiff's right to the water, nor refused him water for mill purposes. During the last five or six years, before the commencement of this action, however, the defendant not only refused to permit the plaintiff to use the water to which he claimed to be entitled, but asserted the right to change the place of use, and to divert such water above the mill whenever it chose to do so, although the effects of such change and diversion would be to prevent the operation of the mill to the plaintiff's injury. Respecting the taking of the water and its effect on his manufacturing business, the plaintiff testified: "They haven't taken much notice of me the last few years. They would take all the water sometimes, and sometimes they would not, just as it would suit them. The effect of this taking water, on the mill, was that it would drive customers away. I have been deprived of water to the extent that, where I used to run about a hundred bushels, the capacity of the

mill in a day and a night, for these last five or six years I could not run ten. This last fall I could not grind ten." It further appears that since the commission of the acts complained of much more land has been irrigated from ditches taken out above the mill than was irrigated from the same sources before. For many years the gristmill in question was the only one in that vicinity, and it appears, after plaintiff had purchased it, in consequence of his objections to diverting water above it, a large portion thereof was turned down the stream, and, after flowing through the mill, was diverted below it, for the purposes of irrigation. The mill was built in the center of the town in 1854, and was afterwards, in 1862, rebuilt at or near the same place. It was operated regularly and profitably before the alleged wrongful diversion of the water, and the mill race has had, at all times, about the same capacity for carrying water, and no controversy arose over the plaintiff's right to the use of water for his manufacturing purposes until the defendant diverted it so as to prevent it from flowing through the mill. This suit was brought to ascertain and determine the plaintiff's right to the use of the water, to have his title thereto quieted, and to have the defendant and its agents restrained from diverting away from his mill any portion of the water to which he may be entitled. The defendant filed a demurrer to the complaint, but it was overruled, and at the trial the court by decree granted to plaintiff the relief asked. Thereupon the defendant appealed.

After a statement of the case, BARTCH, J., delivered the opinion of the court:

It is insisted by the appellant, at the outset, that the complaint fails to state a cause of action, and that its demurrer, by which this point was raised, ought to have

been sustained. The objection seems to be that it does not plead the acquisition of any right in the stream, on the part of the plaintiff, either by appropriation or by adverse user. It is alleged, in effect, that, for a period of more than 30 years prior to the commencement of this action, the plaintiff, his grantors and predecessors in interest, operated and were the owners of a gristmill, located in Nephi, on Salt creek, and during such period were the owners of a sufficient water right in the stream to operate it; that they had the free and uninterrupted use of the water during that period, except the interference therewith by the defendant since 1894; that during 1894, and since, the defendant wrongfully and unlawfully diverted water from the mill which was necessary to operate it, causing injury to the plaintiff; and that it threatens to continue to do so. Ownership, invasion of right and injury are clearly and distinctly alleged, and a cause of action is stated, at least in general terms, although there is no distinct allegation as to how the plaintiff became the owner of the water right,—whether by appropriation, adverse user, or purchase. Under the general allegations, this could be shown by proof. If the defendant desired a more specific and definite allegation of ownership, showing the nature thereof, its remedy was by proper pleading. Having failed in this, it cannot now be heard to complain. *Mangum* v. *Mining Co.*, 15 Utah 535. We are of the opinion that the allegations of the complaint are sufficient to withstand a general demurrer.

Counsel for the appellant next insists that the findings and decree are "wholly wrong in basing the plaintiff's rights upon his adverse use of the water," there being no evidence showing such use. This assumption that the plaintiff's rights are based on adverse user is warranted neither by the pleadings nor by the findings and decree.

In his complaint his rights are based upon ownership since about 1852, the time Nephi was settled and the first mill erected. From the findings of fact it appears that, by certain conveyances, executed to him by persons owning a right to use of water of Salt creek for milling purposes, and by actual appropriation and use thereof, the plaintiff became the owner of the right to use a portion of the waters of that stream, and ever since has been the owner thereof, and used the same to operate his gristmill, and so used it until interrupted by the acts of the defendant, of which he complains. The decree on this point is in harmony with the findings. Thus plaintiff's right is evidently based upon appropriation, purchase and use.

But it is contended that all the water of Salt creek was appropriated for irrigation, domestic, and culinary purposes by the first settlers of Nephi, in 1852, before the first mill was built, and from this it is argued that there was no water flowing in the stream which was subject to appropriation by the owners of the mill, and that consequently their use of the water was simply permissive, and ripened into no right which the owner could enforce in law. It may be that the 19 families who, in 1851 or 1852 first settled the town of Nephi, in beginning to reduce a few arid acres of land to a state of cultivation and productiveness, appropriated, as stated by some of the witnesses, or attempted to do so, for agricultural, domestic and culinary purposes, all the waters of Salt creek, a stream which has since been found to be amply sufficient to supply a town of considerable population,—hundreds of families,—for the same purposes, and, in addition thereto, to irrigate large bodies of arid lands. Possibly, with the limited knowledge of irrigation in those days, those few people, in an attempt to irrigate their lands, turned all the water

of the stream out of its natural channel, and thought they appropriated it; but, even if such be the fact, it does not necessarily follow that it was all "appropriated," within the legal sense of the term. Appropriation of water does not mean merely the diverting of it, but includes its use for some beneficial purpose. The appropriation, intention of the appropriator, use and beneficial purpose are the tests which determine the rights acquired by the diversion of a stream. This is so under the statutes, and the use may be for domestic purposes, irrigating lands, propelling machinery, and the like; that is, the water may be applied to any useful purpose. Comp. Laws Utah 1888, § 2780 (14 Stat. 253).

The object and intention, under the law, in diverting water, must be to apply it to some useful purpose, and, if by means of ditches more is diverted than is necessary for such purpose, the excess cannot be regarded as a diversion for a useful purpose; for, as matter of fact, such excess merely runs to waste, and its diversion cannot result in a vested right. If, therefore, A, who owns and intends to irrigate but one acre of land, diverts all the water of a natural stream, which is sufficient to irrigate two acres, he obtains a right only to sufficient water to irrigate his one acre, and B, who also owns an acre, may appropriate the excess. If, in this arid region, the law were otherwise, it would be a menace to the best interests of the state as well as to its citizens, because it would enable a few individuals, or association of individuals, by diversion of water in excess of use, to greatly limit the area of the public domain which could be cultivated, and thus deprive the state of its revenue and citizens of homes within its borders. This is exemplified in the case at bar, where 19 families settled upon public lands, and are now represented as then having, in cultivating a comparatively

few acres of land, diverted all the water of the stream,
which was then and is now sufficient to irrigate thousands
of acres, and to supply the inhabitants of the city of Nephi
with water for culinary and domestic purposes. No such
extravagance in the use of water was ever intended by the
enactment of the laws relating to the appropriation and
use of water in the arid belt of the country. The extent
of the appropriation is limited, no matter how much
water may have been diverted, to the quantity necessary
for the purposes for which the appropriation is made, and
the intention to apply it to some useful purpose, without
unnecessary delay, must also appear, in order to confer
upon the appropriator a vested right thereto. If there is
no intention, on the part of the appropriator, to apply the
water to such purpose, within a reasonable time, there is
no valid appropriation, and the water remains subject to
appropriation by others. So, where there is more diverted
than is necessary for the object of the appropriation, there
can be no intention to apply the excess to a useful pur-
pose, and such excess remains subject to appropriation.
In Kin. Irr., § 150, it is said: "This intention goes to the
very foundation of the act of appropriation, and must be
evidenced by a constancy, or steadfastness of purpose or
labor, as is usual with men engaged in like enterprises,
who desire a speedy accomplishment of their designs." In
*Ortman* v. *Dixon*, 13 Cal. 34, it was said: "The measure of
the right, as to extent, follows the nature of the appro-
priation or the uses for which it is taken. The intent
to take and appropriate and the outward act go together.
If we concede that a man has right by mere priorty to
take as much water from a running stream as he chooses,
to be applied to such purposes as he pleases, the question
still arises, what did he choose to take? And this depends
upon the general and particular uses he makes of it. If,

for instance, a man takes up water to irrigate his meadow at certain seasons, the act of appropriation, the means used to carry out the purpose, and the use made of the water should qualify his right of appropriation to a taking for a specific purpose, and limit the quantity to that purpose, or to so much as necessary for it." So, in *Canal Co.* v. *Kidd*, 37 Cal. 282, Mr. Chief Justice Sawyer, after reference to a number of cases, observed: "The doctrine is that no man shall act upon the principle of the dog in the manger, by claiming water by certain preliminary acts, and from that moment prevent others from enjoying that which he is himself unable or unwilling to enjoy, and thereby prevent the development of the resources of the country by others. Anybody else may divert and use all the water, be it more or less, that a prior claimant is not in a present condition to use, and, by lack of diligence on his part in pursuing and perfecting a prior inchoate right, many acquire rights even superior to his." Kin. Irr., §§ 151, 153; *McKinney* v. *Smith*, 21 Cal. 374; *Combs* v. *Ditch Co.*, 17 Colo. 146; *Macris* v. *Bicknell*, 7 Cal. 262; *Water Co.* v. *Powell*, 34 Cal. 110; *Simpson* v. *Williams*, 18 Nev. 432.

The principles thus referred to apply with much force to the case at bar, where it is manifest from the testimony that, if the first settlers diverted all the water of Salt creek, they diverted vastly more than was necessary for the uses intended, and therefore the respondent and his predecessors in interest had a right to appropriate, for the purposes of the mill, what was not applied to some useful purpose by the settlers, within a reasonable time after their diversion. If they only appropriated a portion of the stream, which seems to be the case indicated by the circumstances disclosed in the record, then the owners of the mill could appropriate the remainder, or so much

thereof as was necessary for the use intended by them. In either event their appropriation was lawful. From these considerations, and in view of the testimony in the record, it is quite clear that the findings and decree of the trial court are substantially correct, being fair and proper deductions from the evidence.

It is also insisted that the mill was built subject to the right of the appellant to change its place of diversion. This is conceded by counsel for the respondent as to the quantity of water which had been appropriated above the mill, and used by the appellant and its predecessors in interest, prior to the appropriation for mill purposes by the owners, and we do not see that this concession can injuriously affect the rights of the respondent, because he does not claim that the water to which he is entitled for his manufacturing purposes had been appropriated and used by the appellant, and then returned to the stream, but that the appellant had no right to divert it above the mill, and never did appropriate it, except below the mill, after it had answered his purpose. Where a prior appropriator of water merely changes the place of diversion without causing injury to a subsequent appropriator, the subsequent appropriator has no cause of complaint. It may be otherwise, however, when the subsequent appropriator is injuriously affected by the change. In the case at bar, the appellant cannot change the place of diversion of water, which it appropriated subsequently to the location and erection of the mill, in such a manner as to prevent the water, to which the respondent is entitled, from flowing through his mill. The appellant and the respondent are each entitled to the use of a certain portion of the stream, and neither can change the place of diversion so as to injuriously affect the rights of the other. The law, however, is well settled that one who is entitled to the use

of water flowing in a stream may change the place of diversion, if such change causes no injury to the rights of others previously acquired. In Kin. Irr., § 154, the author says: "When water has been lawfully appropriated, the priority thereby acquired is not lost by changing the use for which it was first appropriated and applied, or the place at which it was first employed, provided that the alterations made from time to time shall not be injurious to the rights acquired by others prior to the change." In *Mountain Co.* v. *Morgan,* 19 Cal. 609, it was held that, where a person appropriated and diverted water of a stream at a certain point, he could not afterwards change the place of diversion to the prejudice of the rights of a subsequent appropriator. The court said: "The rule is that the change must not injuriously affect the rights of others." In *Junkans* v. *Bergin,* 67 Cal. 267, it was observed: "Undoubtedly one entitled to divert a quantity of water from a stream may take the same at any point on the stream and may change the point of diversion at pleasure, if the rights of others be not injuriously affected by the change." So, in *Proctor* v. *Jennings,* 6 Nev. 83, it was said: "The rights of each successive person appropriating water from a stream are subordinate to all those previously acquired, and the rights of each are to be determined by the condition of things at the time he makes his appropriation. So far is this rule carried that those who were prior to him can in no way change or extend their use to his prejudice, but are limited to the rights enjoyed by them when he secured his." Black, Pom. Water Rights, § 69; *Fuller* v. *Mining Co.,* 12 Colo. 12; *Kidd* v. *Laird,* 15 Cal. 162; *Ramelli* v. *Irish,* 96 Cal. 214; *Lobdell* v. *Simpson,* 2 Nev. 274; *Mining Co.* v. *Holter,* 1 Mont. 296. The cases of *Fuller* v. *Mining Co., Kidd* v. *Laird,* and *Ramelli* v. *Irish*

16 UTAH—28

were cited by counsel for the appellant in support of their contention here under consideration.

Upon examination, however, it will be found that they all support the doctrine above stated, that one who is entitled to the use of water of a stream may change the place of diversion if the rights of subsequent appropriators are not affected by the change. Counsel for the appellant also cited the case of *Last Chance Min. Co.* v. *Bunker Hill & S. Mining & Concentrating Co.*, 49 Fed. 430, and maintain that it illustrates the proposition that, "where water is used for domestic and irrigation purposes, the place of diversion can always be changed." That portion of the opinion quoted in their brief and on which they rely as illustrating their position, appears to be simply dictum. The portion which is authoritative is covered by the syllabus, which is by the court, as follows: "The appropriator of water, to be used at a specified place for the purpose of operating machinery and other works, after so using it and returning it to its original channel, cannot change the place of use to the damage of a subsequent appropriator lower down on the stream." The proposition of the appellant in the case at bar, that it has the right to change the place of diversion, must therefore be limited to instances where the change does not injuriously affect the rights of respondent.

It is further contended for the appellant that an affirmative issue of equitable estoppel was set up in the answer, and that the failure of the court to find upon such issue was error. If it were conceded that such an issue was contained in the pleadings, still the failure to make a finding thereon would not be reversible error, because such finding, under the facts and circumstances disclosed by the evidence, would necessarily have been prejudicial to the appellant, and the facts found are sufficient to sustain

the decree. *Maynard* v. *Association*, 16 Utah 145; *Groome* v. *Corporation,* 10 Utah 54.

The appellant also complains of the admission of certain oral evidence relating to the grant of a right of way to convey water to the mill in 1854, to a municipal record, and to ownership of a mill by repute. Inasmuch, however, as there is ample proof in the record, unassailed, to support and justify the findings and decree, and as this was a cause in equity, we do not regard it important to determine the competency of the evidence to which the objection refers.

It is further urged in behalf of the appellant that the findings respecting the quantity of water to which the respondent is entitled during the several periods of the year are not justified by the proof, and that such quantity was decreed to him without any basis therefor in the evidence. It appears in the testimony that the declination of the mill race or flume has not been changed since 1862; that the size of the flume is the same as it was before; that it required about 15 or 16 inches in depth of water, running in the flume, to operate the mill at its full capacity; and that during the winter months the mill was always run at its full capacity. There is also evidence showing the condition of the stream, and how the mill race was operated during the other seasons of the year; and, without further reference in detail, we are of the opinion that the findings are not subject to the objections thus interposed, in view of the fact that provision is made for a division of the water between the parties, within a given time, after notice of the decree, and, in case they cannot agree, then for determining by measurement the quantity of water to which each party is entitled. We do not deem it important to discuss the other questions presented, although they have not escaped our notice. We find no reversible error in the record. The judgment is affirmed.

ZANE, C. J., and MINER, J., concur.