## TANNER v. PROVO RESERVOIR CO. et al.

No. 6063.   Decided January 29, 1940.   (98 P. 2d 695.)

Rehearing Denied, June 6, 1940.

140

For opinion on rehearing, see 99 Utah 158, 103 P. 2d 134.

*A. V. Watkins* and *A. L. Booth,* both of Provo, *A. J. Evans,* of Lehi, and *Elias Hansen,* of Salt Lake City, for appellants.

*Christenson, Straw & Christenson,* of Provo, for respondent.

WOLFE, Justice.

This is an appeal from a judgment of the Fourth District Court in and for Utah County. This is the second time this case has been before us. See *Tanner* v. *Provo Reservoir Co. et al.,* 1931, 78 Utah 158, 2 P. 2d 107. Following our order remanding the case to the District Court, a new trial was had and this appeal is from the judgment entered at the conclusion of the new trial.

The point in issue is whether or not plaintiff is entitled to 5 cubic feet of water per second divertible from Provo River at the tailrace of the Utah Power & Light Company superior to the right of defendant, Provo Reservoir Co., to divert at that point certain water designated as its Blue Cliff and Wright waters. To understand the claims of the parties it will be necessary to trace the origin and history of the claims to water in Provo River upon which each of the parties bases its case.

Hereafter in this opinion, defendant will designate the Provo Reservoir Co. only. Any reference to other defendants in this suit will be by specific name.

On April 29, 1885, certain parties recorded in the office of the County Recorder of Utah County a notice of their intention to appropriate eight thousand feet of running water per minute from Provo River to irrigate lands on Provo Bench and for other purposes. This was the initiation of the so-called Blue Cliff water right. Work was begun on the Blue Cliff Canal to carry said water and between 1889 and 1902 water was diverted into the canal. Because of the porousness of the soil and because of landslides and wash-

outs, particularly in 1905 and 1908, great difficulty was experienced in getting water through the canal.

In 1896 the Telluride Power Company acquired a right to divert water from Provo River at a point on the river hereafter referred to as the Power Dam, which point is higher on the river than the original diversion point for Blue Cliff.

Prior to 1904 the Power Company took water out of the river at the Power Dam (above the diversion point for Blue Cliff) but it returned said water to the natural river bed at Nunns (also above the Blue Cliff diversion point). Thus, until 1904, the appropriation of the Power Company, which was subsequent in time to Blue Cliff, in no way conflicted with the Blue Cliff right because the water was returned to the river above the Blue Cliff point of diversion.

In 1904 the Telluride Power Company, predecessor in interest of the Utah Power & Light Company, extended its flume so as to carry water which it was taking out of Provo River above the point of diversion for Blue Cliff to a point below the point of diversion for Blue Cliff before it returned said water to the river. This increased the difficulties of Blue Cliff because the leakage from the flume tended to wash debris into the canal. But after the building of the flume, the Power Company apparently allowed enough water to pass its dam to satisfy the Blue Cliff right. The record does not show any demand for more water by Blue Cliff against the Power Company, and there is testimony that between 1905 and 1910 the canal was full except when breaks or leaks allowed the water to flow out.

In apparent recognition of the difficulties occasioned by the building of its flume, the Power Company in 1905 started delivering some of the water from its flume to Blue Cliff at a point below the original point of diversion for the canal. This continued until 1910.

In 1910 defendant purchased the Blue Cliff right and began diverting Blue Cliff water at Heiselt Dam which is be-

low the original point of diversion for Blue Cliff and above the present site of the tailrace of the Utah Power & Light Company. This continued until 1919.

There is conflicting testimony as to how much water was actually diverted and used under the Blue Cliff right during these years. Certain witnesses testified, and there appears to be a preponderance of evidence, that 40 to 50 second feet of water were turned into the canal at various times and that the canal was constructed so as to allow a diversion, transmission, and use (ultimately) of 50 second feet; others testified, however, that a lesser amount (7.12 second feet, 8 to 10 second feet, 15 to 20 second feet) was measured or estimated to be in the canal or actually delivered for use at various times. We will discuss later the importance of such testimony.

In 1905 an action in equity was commenced in the District Court for Utah County for an adjudication of all water rights on Provo River. The decree in that case, (1907) termed the Chidester decree, divided the water in the river into Class A (primary) and Class B (secondary) rights. The Blue Cliff primary or Class A right was decreed as "2 cubic feet * * * per second of time from six o'clock p. m. every Saturday until 6 o'clock a. m. the succeeding Monday, and from 6 o'clock p. m. until 6 o'clock a. m. each day thereafter." The Blue Cliff secondary or Class B right was decreed as 960/17,960 of the water in the river after all Class A rights were satisfied.

In 1911, A. E. Snow filed with the State Engineer Application No. 4306 to appropriate for power purposes 100 cubic feet per second of water from Provo River at a point approximately where the tailrace of the Olmstead Power Plant of the Utah Power & Light Company is located. In 1915 Snow filed Application No. 4306-A to segregate 5 cubic feet from his former application to be used for irrigation. This was approved in 1916. The application provided that the water should be applied to beneficial use by June 12, 1918,

which was not done but apparently extensions of time were granted by the State Engineer.

In the meantime, in 1915, Application No. 4306-A had been assigned to plaintiff. In 1924 the State Engineer issued Certificate of Appropriation 1310 to plaintiff for 5 second feet of water divertible at the tailrace of Utah Power & Light Company. Certificate 1310 was based on Application 4306-A. In 1926 plaintiff filed this suit to enforce it. Hereafter we refer to the claim of plaintiff for 5 second feet as Certificate 1310, except where it is necessary to refer to Application 4306-A on which it is based.

In the meantime, in 1913, defendant had decided to bring action against various persons and corporations to have its Provo River water rights determined and to have an adjudication of rights to the waters of Provo River, which suit, brought thereafter, is known as No. 2888 Civil. Because plaintiff, who had been State Engineer from 1905 until 1913, possessed particular knowledge of the rules and regulations of the State Engineer's office and extensive knowledge of Provo River and water rights therein, defendant employed him to render counsel, advice, and information for defining and protecting defendant's water rights, particularly in the suit to be brought. Plaintiff was in defendant's employ in such capacity from 1913 until 1921 during which time he received in excess of $18,000 for salary and expenses. There is a conflict of evidence as to the exact purpose of employing plaintiff and as to his duties. The clear preponderance, however, seems to be that some of his duties were to assist in the preparation for suit No. 2888 Civil and to inform of, and aid defendant to join in that suit, all parties claiming a right to waters of Provo River adverse to defendant's claim.

Said suit, known as No. 2888 Civil, was brought in 1914 by defendant against about 400 defendants to adjudicate the water rights on the river. Utah Power & Light Company was one of the defendants in said suit. In 1917 a ten-

tative decree was entered by the District Court, whereby defendant was decreed to have a primary Class A right to 50 second feet as its Blue Cliff right (46 feet of river water and 4 feet from springs).

Thereafter, in 1919, in view of the terms of the tentative decree and a conflict which immediately developed between defendant and Utah Power & Light Company, a stipulation was entered into between these parties (defendant and Utah Power & Light Company) that defendant's primary Blue Cliff right of 50 second feet of water should be diverted at the headgate of the Provo Bench Canal which is at the tailrace of Utah Power & Light Company. The stipulation provides that whenever it is necessary to make the flow in the Utah Power & Light Company flume equal 229 second feet, the Blue Cliff water is to be diverted by the Power Company at its dam, carried through its flume, and returned to the river at the tailrace of its power plant where defendant is able to pump part of said 50 second feet of water into one of its canals and to divert the rest by gravity into another canal.

Final decree in No. 2888 Civil was entered in 1921 awarding defendant a primary right to 50 cubic feet per second of water to be diverted at the tailrace of Utah Power & Light Company.

Plaintiff was not made a defendant in No. 2888 Civil, although he filed an answer in said suit as successor in interest to one Charles H. Taylor who had been named as a defendant, said answer being in regard to a water right not in any way related to the 5 second feet claimed by plaintiff in this suit. Snow was not a party to No. 2888 Civil, so the rights which plaintiff claims through Snow (Certificate 1310 based on Application 4306-A) were not adjudicated in said suit. This was the point decided by this court when the matter previously was before it.

In 1920 plaintiff entered into a contract with defendants whereby he exchanged certain water filings held by him for

1/20 of the Blue Cliff water right. During 1923 and every year thereafter plaintiff and his successors in interest have received 1/20 (2½ second feet) of the Blue Cliff right diverted at the tailrace.

In issue also is the question of the "Wright Waters." Defendant received the right in 2888 Civil to divert said water at Heiselt Dam rather than at a point above the Power Company Dam, allowing 10% decrease for loss in transmission. Defendant seeks to again transfer this water and to divert it from the river at the tailrace. Plaintiff claims that, if defendant elects to divert its "Wright Waters" at the tailrace, his (plaintiff's) right under Certificate 1310 is superior.

The present suit, filed in 1926, was tried in the District Court which decreed that plaintiff was entitled to 5 second feet of water from Provo River but that his right was inferior to that of defendant. Plaintiff and defendant appealed to this court which held plaintiff's Certificate of Appropriation (1310) valid but reversed the remainder of the decree and remanded it for a new trial. At the conclusion of the new trial the District Court found that the Blue Cliff water right entitled defendant to 12 second feet of water divertible at the original point of diversion with priority of 1885; that so long as the water is diverted at the original point of diversion plaintiff is estopped to deny that the Blue Cliff right is for 50 second feet; that defendant's Blue Cliff right is prior and superior to Certificate 1310 if diverted at the original point of diversion; that plaintiff is estopped to deny that defendant is entitled to change the point of diversion to the tailrace, but, if the point of diversion is changed to the tailrace of the Power Company, plaintiff's right under Certificate 1310 is superior to defendant's unless, and to the extent, that such change shall make additional water available for use at the tailrace; and that defendant is entitled to divert the "Wright Waters" at the original place of diversion or any other place, except that if defendant elects to divert said waters at the tailrace plain-

tiff's right under Certificate 1310 is prior unless the change in point of diversion of the "Wright Waters" shall cause additional water to be available for use in which event defendant's "Wright Waters" have priority in that amount. Both parties appeal from this decree.

The case before us is in the nature of an equity proceeding. Consequently, this court will review both law and fact. Constitution of Utah, Art. VIII, Sec. 9. But the findings of the trial court on conflicting evidence will not be set aside unless it manifestly appears that the lower court has misapplied proven facts or made findings which, even taking into consideration that it had before it the witnesses, appear to be against the weight of the evidence. *Stanley* v. *Stanley* 97 Utah 520, 94 P. 2d 465, and the many cases cited in the main opinion and concurring opinion.

We proceed to a consideration of that part of the District Court's decree which limited defendant's Blue Cliff water right to "12 cubic feet per second." Defendant's predecessors in 1885 filed a notice of intention to appropriate 8,000 minute feet of running water from Provo River and almost immediately began work on the Blue Cliff Canal to divert said water. No question is raised as to the validity of this action which it is presumed was in accord with the statutes. The canal was constructed so as to carry approximately 50 second feet of water, as before stated. There is conflicting evidence as to the amount of water actually carried through the Blue Cliff Canal but a careful reading of the record seems to establish clearly that 40 or 50 second feet of water were *turned into the canal* whenever that amount was available. The Blue Cliff interests took 40 to 50 second feet from the river and used beneficially as much of it as did not seep out of their porous canal. The many difficulties encountered in getting water through the canal made it necessary to divert, at various times, water from the river at other points (the Power Company flume, Heiselt's Dam).

As stated in *Sowards* v. *Meagher*, 37 Utah 212, 108  P. 1112, 1116,

"The three principal elements to constitute a valid appropriation of water * * * are * * * '(1) An intent to apply it to some beneficial use; (2) a diversion from the natural channel by means of a ditch, canal, or other structure; and (3) an application of it within a reasonable time to some useful industry.' "

All of these tests were met by the Blue Cliff interests. There is evidence to support the finding that they diverted 50 feet and thus validly appropriated it; that all of the water diverted, less that which seeped out of the canal, was actually applied beneficially to the land without permitting it to run to waste; and that diligence was used to fill the canal to capacity. See, also, *Hague* v. *Nephi Irrigation Co.*, 16 Utah 421, 52 P. 765, 41 L. R. A. 311, 67 Am. St. Rep. 634; 15 R. C. L. 456, § 14 and cases cited. That some of the 50 second feet leaked from the canal, or evaporated, cannot be material to plaintiff. The water was appropriated and taken out. If some of it returned to the river through seepage it was only a temporary condition which the Blue Cliff people were exerting every effort to remedy.

Thus we have the Blue Cliff right of 50 second feet established as of 1885. In 1896 the Telluride Power Company initiated its right of 229 second feet. Its right, however, was not only subsequent to Blue Cliff but, until 1904, did not in any way conflict with it because the water which the Power Company took out of the river was returned to the river above the Blue Cliff point of diversion. Not until 1904, when the power flume was extended and the water used by the Power Company was returned to the river below the point of diversion for Blue Cliff, did the situation become such as to be likely to lead to a conflict. There is nothing in the record as to the amount of water which was allowed to pass the Power Dam after 1904. That some water did flow by the Power Dam is apparent from testimony given and from the finding of the lower court "that during the period from

1910 to * * * 1919, *large quantities of water* were diverted by the Provo Reservoir Company, at a point on the river known as Heiselt's situate below the diversion dam of the Utah Power and Light Company. * * *" (Italics added.)

True it is that there was litigation subsequent to 1885 which involved the Blue Cliff right, but in said suits the rights claimed in the instant case were never raised, nor were these litigants made parties as against each other; so the issues here were never decided by the courts and those decrees are not binding as between Tanner and the other parties before us now. This Court decided in *Tanner* v. *Provo Reservoir Co.*, supra, that the decree in No. 2888 Civil was not binding on plaintiff who was not a party to that suit. But No. 2888 Civil does shed light on the relative rights between defendant and the Utah Power & Light Company who were parties to that suit.

After some four years of litigation the District Court in 1917, entered a tentative decree in No. 2888 Civil, awarding defendant 46 second feet of river water and 4 second feet of spring water which arose in its canal, and awarding the Power Company 229 second feet for power purposes. The parties began immediately to operate under said decree. But a conflict arose because there was not always enough water in the river to satisfy both Blue Cliff and the Power Company. So the parties to that suit, rather than leave it to the court to decide priority as between the two, (which apparently would have been in favor of Blue Cliff because it had a priority of 1885 as against the Power Company's priority of 1896, but which, of course, was never judicially determined) arranged a compromise and entered a stipulation regarding their rights and points of diversion. Their agreement was simple and allowed each to use the amount awarded in the tentative decree. The Power Company was to use the water first for power purposes and defendant was then to use said water for irrigation. This was

made possible by changing the point of diversion for defendant to the tailrace of Utah Power & Light Company. The stipulation was filed in No. 2888 Civil in 1919, and in 1921 the District Court entered its final decree confirming said arrangement and agreement.

That decree (No. 2888 Civil) does not bind plaintiff in this suit but it clearly shows that at that time (suit commenced in 1914 and decree entered in 1921) the owners of the Blue Cliff right were claiming (and were awarded by the court) against all parties to that suit 50 second feet under the Blue Cliff right. So far as appears, no party to No. 2888 Civil has appealed from the decree entered therein. It has apparently been accepted by all parties to that suit as a final adjudication.

Plaintiff, however, without being a party to the suit, points to the Chidester decree (1907) to establish that defendant's Blue Cliff right was less than 50 second feet. But defendant asserts that the Chidester decree was supported by a later decree (No. 2888 Civil). Neither the Chidester decree nor the decree in No. 2888 Civil is conclusive as between Tanner and the other parties to the instant case, but to the extent that plaintiff chooses to introduce the Chidester decree to show that the Blue Cliff right is less than 50 second feet the defendants may, by the same token, introduce the decree in No. 2888 Civil (later in time) to rebut such showing. Since plaintiff attempted to use the Chidester decree against defendant and in his own favor to show that defendant was entitled to a comparatively small amount of water, he cannot complain if defendant uses the later decree (No. 2888 Civil) to show that defendant was found to be entitled to a much larger amount. We need not decide whether either of the prior decrees had any evidentiary value in this suit. Our holding is specifically limited to the point that, inasmuch as plaintiff introduced the Chidester decree, defendant was justified in introducing the decree in No. 2888 Civil. In 1921 the District Court with unquestioned

jurisdiction over the waters of Provo River found that, as against the parties to that suit, the Blue Cliff claim to 50 second feet had never been abandoned, and found 50 second feet to be the amount of the Blue Cliff right. And in this suit plaintiff has not proved that defendant or its predecessors ever abandoned their claim or ceased their efforts to appropriate 50 second feet under the Blue Cliff right. Abandonment of a water right requires concurrence of intention to abandon and actual failure in its use for the statutory period. *Broughton* v. *Stricklin,* 146 Or. 259, 28 P. (2nd) 219, 30 P. (2nd) 332.

Having decided that the Blue Cliff right is for 50 second feet of water with priority of 1885, we turn to the question of changing its point of diversion. The trial court held that the plaintiff is estopped to deny that the Blue Cliff right is for 50 second feet if diverted at the original point of diversion. Why then is not plaintiff estopped to deny that the right is for 50 second feet when diverted at the tailrace? The point of diversion has been changed many times—from the original point, to a point where the power flume and the Blue Cliff Canal intersect, back to the original point, to Heiselt Dam, etc. Prior to 1909, an appropriator of water could change his point of diversion without the consent of the State Engineer. In that year the law was amended so as to require the approval by the State Engineer of any change. Laws 1909, c. 62, p. 90. Neither defendant nor its predecessors received the approval of the State Engineer to change the point of diversion.

Plaintiff cites *United States* v. *Caldwell,* 64 Utah 490, 231 P. 434, as authority for the proposition that no prior appropriator has a right to change his point of diversion if thereby the public or any other appropriator is adversely affected. With that proposition we agree and indeed the holding is law in this state. We cannot agree that

plaintiff has shown that his rights have been or will be adversely affected by the change in point of diversion, and "Where a prior appropriator of water merely changes the place of diversion without causing injury to a subsequent appropriator the subsequent appropriator has no cause of complaint," *Hague* v. *Nephi Irrigation Co.,* supra [16 Utah 421, 52 P. 768, 41 L. R. A. 311, 67 Am. St. Rep. 634]. We have pointed out above that defendant has under its Blue Cliff right a right to 50 second feet of water with priority of 1885. The trial court has held that plaintiff is estopped to deny that the right is to 50 second feet if diverted at the original point. Plaintiff himself has asserted that he makes no objection to the diversion of the Blue Cliff right at the old Blue Cliff heading or at Heiselt. But, if defendant, is entitled to 50 second feet of water, and if he takes it from the river and uses it, that water is gone so far as all other appropriators on the river are concerned. If defendant is entitled to, and does take out 50 second feet at Heiselt or the original point of diversion, plaintiff cannot use that water. How then is plaintiff injured (adversely affected) if the Blue Cliff water is taken out of the river at the tailrace?

In effect, what plaintiff seeks to do is to take advantage of a physical situation on the river. If the Blue Cliff water is diverted at its original point and the Power Dam remains where it is, there will be times when both rights cannot be fully satisfied from the water in the river. The Power Company and defendant have solved this conflict by agreeing to a change in the point of diversion for Blue Cliff, which change the District Court has affirmed. Certainly, if the Power Company were required to pass 50 second feet by its power dam for diversion by defendant, which would make it unavailable for plaintiff, the latter cannot complain if the water is passed through the flume and then given to defendant, thus making it unavailable to plaintiff.

Plaintiff's Certificate of Appropriation 1310 is valid, as found by *Tanner* v. *Provo Reservoir Co.*, supra, but we hold that it is subsequent to defendant's Blue Cliff right to 50 second feet Class A right, and we further hold that said Blue Cliff water may be diverted at the tailrace.

There is still another ground on which we hold that defendant must prevail. Defendant has pointed out that plaintiff claims under Certificate of Appropriation No. 1310 issued in 1924; that Certificate 1310 was based on Application 4306—A which was split off from Application 4306 in 1915; and that Application 4306 was initiated in 1911. Yet not until 1926 did plaintiff assert his claim. The Blue Cliff water has been diverted at the tailrace since 1919, but no protest was made to the Water Commissioner of the river nor to defendant until 1926. That plaintiff could have properly asserted his claim at any time after the approval of Application 4306—A cannot be denied, *Little Cottonwood Water Co.* v. *Kimball*, 76 Utah 243, 289 P. 116, but he failed to make any protest while defendant, unaware of the adverse claim, expended large sums for pumps, and diversion works and contracted with farmer water-users to sell them water. In failing to assert his claim plaintiff was guilty of laches to the extent that he is prevented from asserting his claim now to the detriment of defendant and others who were misled by his conduct. Silence when conscience requires one to speak may establish equitable estoppel. *Clark* v. *Kirby*, 18 Utah 258, 55 P. 372.

Not only did plaintiff fail to assert his claim within a reasonable time, but by his conduct he recognized and ratified the award in No. 2888 Civil of the Blue Cliff right as 50 second feet divertible at the tailrace. In 1920 (after the stipulation between defendant and Utah Power & Light Company) plaintiff and defendant entered into a contract whereby plaintiff exchanged certain water filings held by him for "a one-twentieth interest in and to the Blue Cliff

water right *as the same shall be determined and decreed by the Court in civil action No.* 2888. * * *" (Italics added.) The 1/20 interest was in 1922 conveyed to plaintiff who accepted the deed. In 1923 and every year since plaintiff and his successors in interest have diverted 1/20 of the Blue Cliff water right at the tailrace. Thus plaintiff contracted for 1/20 of the Blue Cliff right as the court should determine it; he recognized defendant's right to divert at the tailrace; he accepted 2½ second feet (1/20 of 50 second feet) diverted at the tailrace; he conveyed his 1/20 Blue Cliff interest to third parties for valuable consideration; but now he comes into court to deny that the Blue Cliff right is for 50 second feet and to deny that said water may be diverted at the tailrace. The inconsistency of plaintiff's positions is apparent.

But aside from the laches of plaintiff in failing timely to assert his rights and aside from his recognition of, and receipt of benefits from, a decree of the District Court inconsistent with his position in this case, his positive conduct during the years of 1913 to 1921, inclusive, estops him now to deny that the Blue Cliff right is for 50 second feet of water divertible from the river at the tailrace.

In 1913 plaintiff was employed by defendant to perform certain duties. There is conflict in the testimony as to the exact nature of plaintiff's duties and there was no written contract of employment, but from a careful reading of all the testimony it clearly appears that plaintiff was employed because of his special knowledge of the State Engineer's office and procedure (Tanner was State Engineer from 1905 until 1913) and because of his extensive knowledge of the Provo River system and water rights therein. It seems clear that at the time plaintiff was employed defendant already contemplated, and was preparing for, the adjudication suit which became No. 2888 Civil; that the suit contemplated an adjudication of *all* the rights on the river and that, consequently, defendant intended to have joined as defendants

in said suit everyone who claimed water in conflict with defendant's claim; that plaintiff knew these things; and that one of plaintiff's duties was to advise defendant as to any adverse claims to water of the river of which he knew (including his own). But plaintiff remained silent as to his own claim, appeared as a witness and rendered much advice to defendant's attorneys in suit No. 2888 Civil, participated in the negotiations leading up to the stipulation with the Utah Power & Light Company in 1919, and recommended to defendant that it enter into the stipulation. During all this time plaintiff received a salary from defendant and it appears that defendant relied heavily on plaintiff's counsel and judgment. In reliance on plaintiff's advice, defendant entered into the stipulation with the Utah Power & Light Company and bound itself to divert its Blue Cliff water at the tailrace when said water is needed to make the flow in the power flume equal 229 second feet, built expensive diversion works at the tailrace, and entered into contracts to supply water to consumers.

In reply to all this plaintiff asserts that he told the president of defendant (J. R. Murdock, now deceased) of his claim to 5 second feet, prior to defendant's entering into the stipulation with the Power Company. There is evidence which it is claimed supports this assertion, but any inference from that evidence to the effect that defendant realized that plaintiff claimed water adversely to it must give way to the stronger inference that defendant did not know of such claim, which latter inference arises from plaintiff's conduct in continuing to receive a salary and expenses to assist defendant to establish priority of its right while at the same time he (plaintiff) retained a conflicting claim which was never litigated or settled. To us there appears to be an overwhelming preponderance of evidence to the effect that defendant relied greatly on the knowledge and advice of plaintiff, and that by his conduct, active and passive, plaintiff misled defendant to its detri-

ment. We hold, therefore, that plaintiff is now estopped to assert his claim as against defendant which has changed its position in reliance on plaintiff's advice and conduct. *Allen* v. *Cannon*, 8 Utah 8, 28 P. 868; *Ricketts* v. *Scothorn*, 57 Neb. 51, 77 N. W. 365, 42 L. R. A. 794, 73 Am. St. Rep. 491; *State ex inf. Shartel ex rel. City of Sikeston* v. *Missouri Utilities Co.*, 331 Mo. 337, 53 S. W. 2d 394, 89 A. L. R. 607; *Sovereign Camp W. O. W.* v. *Newsom*, 142 Ark. 132, 219 S. W. 759, 14 A. L. R. 903; *Vogel* v. *Shaw*, 42 Wyo. 333, 294 P. 687, 75 A. L. R. 639. See 19 Am. Jur. § 34 at p. 634; Story on Equity Jurisprudence, 14th Ed., Vol. 3, § 1989; Pomeroy on Equity Jurisprudence, 4th Ed., Vol. II, § 804; Bigelow on Estoppel, 6th Ed., p. 607.

Finally, we come to the question of the "Wright Waters." This water, now owned by defendant, was formerly diverted from the river at a point above the Power Dam. In the decree in No. 2888 Civil, defendant was awarded the right to permit said water to flow down the river and to divert it (minus 10% thereof for loss in transmission) at Heiselt. It appears that the "Wright Waters" were originally appropriated from the river about 1870 so there is no question as to the priority of said water over Certificate 1310. When defendant purchased said water in 1912 (approximately 6 second feet it changed the point of diversion of 2 second feet to Heiselt and in 1917 so changed the point of diversion for the remainder. Now defendant wishes to again change the point of diversion and divert this water at the tailrace. Obviously, if defendant is entitled to approximately 6 second feet of water at Heiselt which the Power Company must allow to flow by its dam (priority of 1870 as against 1896) and defendant elects to have said water flow through the power flume and to divert it at the tailrace, there will be approximately 6 second feet more water available at the tailrace. The holding of the lower court seems, therefore, to be correct. Defendant is entitled to priority over plaintiff's Certificate 1310 so far as its

"Wright Waters" are concerned to the extent that additional water is available at the tailrace (which is apparently the full amount of said appropriation, diminished by 10% by the prior decree permitting transfer down the river, and further diminished by further loss, if any, occasioned by the change in point of diversion to the tailrace).

The case is remanded to the District Court for further proceedings in accordance with the views expressed in this opinion. Costs to appellants.

MOFFAT, C. J., and LARSON, McDONOUGH, and PRATT, JJ., concur.